**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X   Case No.:
ALEXANDRA NOH,

                      Plaintiff,                      **COMPLAINT**

    -against-

ADMARKETPLACE, INC., and EUGENE KILBERG    **PLAINTIFF DEMANDS**
*individually,*                                                    **A TRIAL BY JURY**

                      Defendants.
-------------------------------------------------------------------X

       Plaintiff, ALEXANDRA NOH, by and through her attorneys, PHILLIPS & ASSOCIATES, Attorneys at Law, PLLC, hereby complains of the Defendants as follows:

## NATURE OF THE CASE

1. Plaintiff brings suit against Defendants to redress the substantial and lifelong injuries she has and continues to suffer as a result of being sexually harassed and discriminatorily degraded by her direct supervisor.

2. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII"); 42 U.S.C. § 1981, *et seq.* ("1981"); the New York State Human Rights Law, New York State Executive Law § 296, et. seq. ("NYSHRL") and the New York City Human Rights Law, New York City Administrative Code § 8-107, et. seq. ("NYCHRL") and seeks damages to redress the injuries she has suffered as a result of being sexually harassed and discriminated against based on her sex/gender and race (Asian), and otherwise subjected to a hostile work environment on the basis of their sex/gender and race.

## JURISDICTION, VENUE, AND PROCEDURAL PREREQUISITES

3. Jurisdiction of this Court is proper under 42 U.S.C. §2000e-5(f)(3) and 1981, and 28 U.S.C.

1

§§ 1331 and 1343.

4. The Court has supplemental jurisdiction over the claims that Plaintiff has brought under state and city law pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as one or more Defendants reside within the Southern District of New York, or the acts complained of occurred therein. By: (a) timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on June 22, 2022  (b) receiving a Notice of Right to Sue from the EEOC on January 3, 2024; (c) commencing this action within 90 days of the issuance of the Notice of Right to Sue by the EEOC; and (d) contemporaneously with the filing of this Complaint, mailing copies thereof to the New York City Commission of Human Rights ("NYCCHR") and the Office of the Corporation Counsel of the City of New York pursuant to the notice requirements of § 8-502 of the New York City Administrative Code, Plaintiff has satisfied all of the procedural prerequisites for the commencement of the instant action.  A copy of the Notice of Right to Sue is annexed hereto as Exhibit A; a copy of the transmittal letter to the NYCCHR, et ano., is annexed hereto as Exhibit B.

## PARTIES

6. That at all times relevant hereto, Plaintiff ALEXANDRA NOH is a female and a resident of the State of New York and the County of Queens.

7. That at all times relevant hereto, Defendant ADMARKETPLACE, INC. ("ADMARKETPLACE") was and is a Foreign Business Corporation operating in the State of New York.

8. Upon information and belief, Defendant ADMARKETPLACE employs at least fifteen or more employees.

9. Defendant ADMARKETPLACE had the authority to hire, fire, or affect the terms and conditions of Plaintiff's employment.

10. That at all times relevant hereto, Plaintiff was an employee of Defendant ADMARKETPLACE.

11. At all times relevant, Defendant EUGENE KILBERG ("Defendant EUGENE") was employed by Defendant ADMARKETPLACE as the Director of User Experience (UX).

12. That at all times relevant hereto, Defendant EUGENE had supervisory authority over Plaintiff. Defendant EUGENE had the authority to hire, fire, or affect the terms and conditions of Plaintiff's employment, or to otherwise influence the decisionmaker of the same.

13. That at all times relevant hereto, Defendants ADMARKETPLACE, INC., and EUGENE KILBERG are collectively referred to herein as "Defendants."

## MATERIAL FACTS

14. From on or about October 26, 2021, Plaintiff was hired by Defendants as a "UI/UX Product Designer" for Defendant ADMARKETPLACE, INC.

15. As a "UI/UX Product Designer," Plaintiff's responsibilities included but were not limited to communicating effectively with stakeholders, managers, developers, and end users to build products, then ensuring designs are properly translated into code, and presenting designs to management and stakeholders.

16. Since the beginning of Plaintiff's employment, Plaintiff was the victim of continuous and ongoing sexual harassment and a hostile work environment from her manager and supervisor Defendant EUGENE.

17. Since the beginning of Plaintiff's employment, Defendant EUGENE created a hostile working environment, which unreasonably interfered with Plaintiff's ability to perform her job duties and inhibiting communication and working relationships with other colleagues.

18. During the course of Plaintiff's employment with Defendants, Defendant EUGENE harassed and made inappropriate comments towards Plaintiff. Plaintiff was shocked, disgusted, and offended by Defendant EUGENE's continued behavior.

19. On approximately ten (10) separate occasions from late October through December of 2021, Defendant EUGENE insisted on seeing Plaintiff's computer screen while she worked. On some of these occasions, Defendant EUGENE approached Plaintiff's chair from behind while Plaintiff was seated. He placed his left hand on the chair's back, which kept the chair firmly in place. On all of these occasions, Defendant EUGENE placed his right hand on top of Plaintiff's right hand to move her computer mouse.

20. On each occasion, Plaintiff would flinch and move her hand away, to which Defendant would respond "Oops, sorry." Plaintiff asked each time that Defendant EUGENE please view the same files on his own computer. Plaintiff would additionally send Defendant EUGENE said files so he could access them from his own computer. Nevertheless, Defendant EUGENE would then stay in place and use Plaintiff's computer mouse while speaking less than one (1) foot from her ear.

21. Defendant EUGENE would speak so closely to Plaintiff that Plaintiff was able to feel the heat from Defendant EUGENE's breath. On at least two (2) occasions, Defendant EUGENE was speaking in a manner which caused his spit to fall into Plaintiff's food.

22. In contrast, Plaintiff observed that Defendant EUGENE interacted with her male teammate and Senior UI/UX Designer David Noboa by instead seating himself at least two (2) feet away from David and letting David operate his own computer.

23. This targeted and intentional behavior made Plaintiff feel violated, trapped, and appalled.

24. On or about the beginning of December of 2021, Plaintiff stood at her desk to put on her jacket. In order to do so, Plaintiff lifted up her arms above her shoulders. Defendant EUGENE watched Plaintiff intently as she did so and then stated "Lexy, your figure is so different from the Asian girls I've dated."

25. Plaintiff was shocked, appalled, and disturbed by this blatant sexual and racial discrimination and harassment. Plaintiff was too shocked to respond and immediately left the premises following this harassing comment.

26. Plaintiff did not give any indication that these sexual advances or comments were welcomed. Additionally, on more than one occasion, Plaintiff instructed, "EUGENE, you can't say that" and "Eugene, that's extremely disrespectful."

27. This conduct occurred within earshot of numerous other employees. To Plaintiff's knowledge, no one addressed this issue.

28. Throughout the course of her employment, upon completion of various tasks for Defendant EUGENE, Defendant EUGENE would tell Plaintiff, "Lexy, you're such a *good* girl."

29. Plaintiff observed that Defendant would also make this statement to a female teammate, UX Designer Sarah Horowitz. Plaintiff, to date, has never observed Defendant EUGENE make this statement to her male teammate David Noboa.

30. Whenever Plaintiff disagreed with Defendant EUGENE, Defendant EUGENE would ask Plaintiff if it was "her time of the month," blatantly referring to Plaintiff's menstrual cycle and inappropriately imputing its effects on Plaintiff's demeanor.

31. Plaintiff, to date, has never observed Defendant EUGENE make this statement to David Noboa.

32. When Plaintiff verbalized feeling too hot or cold in the office, Defendant EUGENE would state, "I know why! That's biology!" and said so while laughing.

33. Defendant's comments made Plaintiff feel sexualized, demeaned, and belittled.

34. On at least three (3) separate occasions, Defendant EUGENE commented on Plaintiff's diet. For example, when Plaintiff ate at her desk, Defendant EUGENE stated, "You shouldn't eat so much, or you'll get too big."

35. On or about the end of November of 2021, Defendant EUGENE handed David Noboa a backpack with the AdMarketplace logo, and stated to Plaintiff, "I didn't get one for you Lexy, because you girls only like brand name things."

36. On or about the end of December of 2021, employees of Defendant ADMARKETPLACE began working remotely due to the prevalence of the Omicron variant of COVID-19. Despite the remote nature of her employment from this point on, Defendant EUGENE's sexual harassment and gender discrimination towards Plaintiff continued.

37. On or about March 21, 2022, Defendant EUGENE informed Plaintiff that he was eating snacks from Plaintiff's desk drawers and told Plaintiff, "I'm helping you get rid of carbs," and that eating the snacks was "a favor to [her]" to help maintain her weight and figure.

38. Defendant EUGENE also referred to Plaintiff as "darling" on various occasions.

39. During team meetings via virtual video chat that occurred from on or about January of 2022 to the end of March of 2022, Plaintiff left her camera off to avoid being watched by Defendant EUGENE. Although other teammates had their cameras off as well, Defendant EUGENE stated, "Lexy, why are you hiding? Come out, come out, wherever you are!"

40. This made Plaintiff feel belittled and targeted.

41. On or about January to February of 2022, Plaintiff observed that on 1-on-1 video calls with her, Defendant EUGENE placed himself in a different room than when on team calls. In

the room where Defendant EUGENE conducted 1-on-1 calls, Plaintiff observed a photo of a naked woman on the wall behind Defendant EUGENE.

42. On one such occasion on a 1-on-1 call with Plaintiff, Defendant EUGENE pointed out the aforementioned photo without any provocation or inquiry. He explained that the photo was one of his ex-girlfriend. He then brought his laptop closer to the photo, forcing Plaintiff to look at it, while explaining how attractive his ex-girlfriend was and that she was a model.

43. On multiple occasions, Defendant EUGENE berated Plaintiff in front of other colleagues. On one such occasion on or about March 22nd or March 23rd of 2022, during a team video call, Defendant EUGENE was not paying attention while Plaintiff was explaining the answer to a question he asked.

44. Plaintiff responded, "We're going to talk about it in a few minutes."

45. To this, Defendant EUGENE became irate and screamed, "Lexy, it's a simple yes or no question – when I ask you a question – you answer it!"

46. Plaintiff's male teammate David Noboa then reiterated "EUGENE, we're going to talk about it in a few minutes."

47. Defendant EUGENE immediately calmed down and stated, "THANK YOU, David."

48. Plaintiff felt shocked, offended, and abused by this discriminatory and outrageous treatment.

49. Following this team call, Defendant EUGENE demanded Plaintiff have a 1-on-1 call with him. This call lasted over ninety (90) minutes and consisted of Defendant EUGENE berating Plaintiff regarding her "disrespectful" behavior and undermining his authority. Defendant EUGENE stated, amongst other things, that Plaintiff was not to talk back to him, needed to change the way she spoke to him because he is her superior, and that if he

asks questions, to never refer to any documents or files but to instead simplify the answer and tell him exactly what he wants to hear.

50. To Plaintiff's information and knowledge, Defendant EUGENE did not approach David Noboa for a 1-on-1 following this video call.

51. Plaintiff was incredibly shaken and disturbed by this treatment by Defendant EUGENE, especially since it threatened her job security.

52. Defendant EUGENE's harassment interfered with her duties and affected her mental health. Plaintiff actively tried to avoid having her video camera on during video calls and started shaking at the thought of returning to the office.

53. On yet another occasion in late 2021, Plaintiff, Defendant EUGENE, and David Noboa were discussing an upcoming company trip to Miami.

54. Plaintiff, knowing Defendant EUGENE would stay in a much nicer hotel room than herself and David, joked "We should trade rooms!"

55. After this conversation, Defendant EUGENE cornered Plaintiff and stated in sum and substance, "You shouldn't joke around about sharing rooms with me."

56. Plaintiff was appalled by the suggestion and replied that her intent was absolutely not to suggest the two of them share a room. In response, EUGENE smirked and stated that he must have misheard.

57. On or about March 29, 2022, Plaintiff reported this sexual harassment, gender and race discrimination to Claire Luckner, the Director of Human Resources.

58. On or about March 30, 2022, Plaintiff also reported this sexual harassment, gender and race discrimination to George Pappachen, Head of Business and Legal Affairs.

59. On or about March 30, 2022, George Pappachen stated in sum and substance, "We should have known. We should have done something about it."

60. On or about April 4, 2022, Plaintiff also discussed the allegations with Steven Read, Senior Vice President of Product Management and Defendant EUGENE's Supervisor.

61. During this conversation, Steven Read stated in sum and substance, "I've reflected on what I could have and should have done differently…"

62. Plaintiff requested not to be forced to come back into the office, where she communicated that she felt unsafe and would be triggered by the physical space that led to her psychological trauma. Plaintiff was denied this accommodation, even though she had previously been granted the ability to work from home indefinitely.

63. Plaintiff despite performing her job at a satisfactory, and higher-level, from home, after reporting Defendant EUGENE's behavior, Defendant ADMARKETPLACE insisted Plaintiff return to work physically in the office.

64. On or about the end of April of 2022, overwhelmed with fear and distress from the sexually harassing environment, tendered her resignation due to the neglect and insufficient response to her reports of discrimination and sexual harassment.

65. Defendant ADMARKETPLACE knew or should have known of the discriminatory conduct.

66. Plaintiff has been humiliated, offended, and abused by Defendants.

67. Defendants created a hostile working environment, which unreasonably interfered with Plaintiff's work environment.

68. **Plaintiff was discriminated against and harassed by Defendants, solely due to her sex/gender (female) and race/national origin**.

69. But for the fact that Plaintiff is a female and of Asian descent, Defendants would not have treated her differently.

70. Defendants' actions and conduct were intentional and intended to harm Plaintiff.

71. The above are just some of the ways Defendants discriminated and sexually harassed Plaintiff while employing her.

72. Corporate Defendants had knowledge of and/or acquiesced in the discrimination and/or harassment by Defendant EUGENE.

73. Plaintiff's performance was, upon information and belief, exemplary during the course of her employment with Defendants.

74. Plaintiff has been unlawfully discriminated against, sexually harassed, humiliated, degraded and belittled, and as a result, suffers loss of rights, and emotional distress.

75. As a result of the Defendants' discriminatory and intolerable treatment of Plaintiff, Plaintiff has suffered severe emotional distress.

76. As a result of the acts and conduct complained of herein, Plaintiff has suffered emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional distress.

77. As a result of the above, Plaintiff has been damaged in an amount which exceeds the jurisdiction limits of the Court.

78. Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, Plaintiff demands Punitive Damages as against all Defendants, jointly and severally.

### AS A FIRST CAUSE OF ACTION
### FOR DISCRIMINATION UNDER TITLE VII
### (Not Against Individual Defendant)

79. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this complaint.

80. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., for relief based upon the unlawful

employment practices of the above-named Corporate Defendant. Plaintiff complains of Corporate Defendant's violation of Title VII's prohibition against discrimination in employment-based, in whole or in part, upon an employee's sex/gender (female).

81. Corporate Defendant engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e et seq., by discriminating against Plaintiff because of her sex/gender (female).

## AS A SECOND CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK STATE EXECUTIVE LAW

82. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

83. Executive Law § 296 provides that,

> 1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, **race**, creed, color, national origin, sexual orientation, military status, **sex**, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

84. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of her sex/gender (female) and race (Asian).

## AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

85. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

86. The New York City Administrative Code §8-107(1) provides that,

> It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, **race**, creed, color, national origin, **gender**, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from

11

employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment." (emphasis added).

87. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code §8-107(1)(a) by creating and maintaining a hostile work environment, and otherwise discriminating against Plaintiff because of her sex/gender (female) and race (Asian).

### AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE VICARIOUS EMPLOYER LIABILITY
**(Against Defendant ADMARKETPLACE)**

78. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

79. The New York City Administrative Code § 8-107(13) Employer liability for discriminatory conduct by employee, agent or independent contractor.

   a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

   b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

      1. the employee or agent exercised managerial or supervisory responsibility; or

      2. the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct here that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

      3. the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

    c. An employer shall be liable for an unlawful discriminatory practice committed by a person employed as an independent contractor, other than an agent of such employer, to carry out work in furtherance of the employer's business enterprise only where such discriminatory conduct was committed in the course of such employment and the employer had actual knowledge of and acquiesced in such conduct.

80. Defendant ADMARKETPLACE violated the section cited herein as set forth.

81. Defendant EUGENE subjected Plaintiff to unwanted sexual harassment as alleged above.

82. Defendant ADMARKETPLACE was aware and or should have been aware that Plaintiff was being subjected to unlawful discrimination, retaliation and a hostile work environment by Individual Defendant EUGENE, who was acting within the scope of his authority as a manager of Defendant ADMARKETPLACE as outlined in this Complaint above.

83. Defendant ADMARKETPLACE either did nothing to assist PLAINTIFF and/or to investigate or abate the hostile work environment before actual notice of the discrimination and harassment.

84. Individual Defendant EUGENE would not have been able to take his respective actions against Plaintiff *but for* his employment and management position at Defendant ADMARKETPLACE.

85. Defendant ADMARKETPLACE is therefore vicariously liable for the sexual harassment, discrimination, and hostile environment experienced by Plaintiff.

86. As a result of the acts and conduct complained of herein, Plaintiff has suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

## **JURY DEMAND**

87. Plaintiff demands a trial by jury.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et. seq., 42 U.S.C. § 1981, *et seq.* ("1981"), the New York State Human Rights Law, New York State Executive Law, § 296 et. seq., and the New York City Human Rights Law, Administrative Code § 8-107 et seq., in that Defendants discriminated against Plaintiff and created a hostile work environment on the basis of her sex/gender and race;

B. Awarding Plaintiff compensatory damages for mental, and emotional injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

C. Awarding Plaintiff punitive damages;

D. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

E. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendants' unlawful employment practices.

Dated: New York, New York
March 20, 2024

           **PHILLIPS & ASSOCIATES,**
           **Attorneys at Law, PLLC**

By: _____
Melissa Vo, Esq.
*Attorneys for Plaintiff*
45 Broadway, Suite 430
New York, New York 10006
T: (212) 248-7431
F: (212) 901 - 2107
mvo@tpglaws.com