**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, New York 10178
(212) 309-6000
Attorneys for Defendant adMarketplace

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
|  |  |  |
|---|---|---|
| ALEXANDRA NOH, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| -against- | : | Case No. 24-cv-02107 (ER) |
| | : | |
| ADMARKETPLACE, INC.; EUGENE KILBERG, Individually, | : | **Oral Argument Requested** |
| | : | |
| Defendants. | : | |
| | : | |

-----------------------------------------------------------------x

# MEMORANDUM OF LAW IN SUPPORT OF
# <u>DEFENDANT ADMARKETPLACE'S MOTION TO DISMISS THE COMPLAINT</u>

MORGAN, LEWIS & BOCKIUS LLP

Melissa C. Rodriguez
Maria Fernanda DeCastro
101 Park Avenue
New York, New York 10178
Tel.:  (212) 309-6000
Fax:  (212) 309-6001

*Attorneys for Defendant adMarketplace*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF RELEVANT FACTS ALLEGED.................................................. 3

RELEVANT PROCEDURAL HISTORY ................................................................. 5

ARGUMENT ........................................................................................................... 5

I.      STANDARD OF REVIEW ............................................................... 5

II.     PLAINTIFF'S ALLEGATIONS FALL MARKEDLY SHORT OF
        WHAT IS REQUIRED TO PLEAD A PLAUSIBLE CONSTRUCTIVE
        DISCHARGE CLAIM............................................................................ 6

        A.      Plaintiff Has Not Alleged Intolerable Work Conditions That
                Would Force A Reasonable Person To Resign......................... 7

        B.      Plaintiff Has Not Sufficiently Pled Facts That Defendant
                Deliberately Created Intolerable Conditions On The Basis Of Any
                Protected Category or Activity. ............................................. 11

III.    PLAINTIFF FAILS TO STATE A CLAIM OF RACE OR GENDER
        DISCRIMINATION. ........................................................................ 12

IV.     PLAINTIFF FAILS TO STATE A CLAIM OF A HOSTILE WORK
        ENVIRONMENT ............................................................................. 16

V.      DISCOVERY SHOULD BE STAYED PENDING RESOLUTION OF
        DEFENDANT'S MOTION. .............................................................. 20

CONCLUSION........................................................................................................ 20

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Anderson v. Davis Polk & Wardwell LLP,*
 850 F. Supp. 2d 392 (S.D.N.Y. 2012) ................................................................... 19

*Appleton v. City of New York,*
 Index No. 157849/2017, 2019 WL 1206347 (Sup. Ct. N.Y. County, March 14,
 2019) ..................................................................................................................... 13

*Askin v. Dep't of Educ. of the City of New York,*
 110 A.D.3d 621 (1st Dep't 2013) ......................................................................... 16

*Barr v. Abrams,*
 810 F.2d 358 (2d Cir. 1987) .................................................................................... 6

*Bell Atl. Corp. v. Twombly,*
 550 U.S. 544 (2007) ................................................................................................ 5

*Brennan v. Metro Opera Ass'n.,*
 192 F.3d 310 (2d Cir. 1999) .................................................................................. 16

*Catania v. NYU Langone Health Sys.,*
 No. 22-4362, 2022 WL 17539121 (S.D.N.Y Dec. 5, 2022) .................................... 9

*Cayemittes v. City of New York Department of Housing Preservation &
 Development,*
 974 F. Supp. 2d 240 (S.D.N.Y. 2013), *aff'd*, 641 F. App'x 60 (2d Cir. 2016) ......... 7

*Chesney v. Valley Stream Union Free Sch. Dist. No. 24,*
 236 F.R.D. 113 (E.D.N.Y. 2006) .......................................................................... 20

*D.C. v. Copiague Union Free Sch. Dist.,*
 No. 16- 4546, 2017 WL 3017189 (E.D.N.Y. July 11, 2017) ................................. 17

*Dayes v. Pace Univ.,*
 No. 98-3675, 2000 WL 307382 (S.D.N.Y. Mar. 24, 2000), *aff'd*, 2 F. App'x
 204 (2d Cir. 2001) ................................................................................................. 18

*De La Pena v. Metro Life. Ins. Co.,*
 953 F. Supp. 2d 393 (E.D.N.Y 2013) ................................................................... 13

*Dean v. Westchester Cnty. Dist. Attorney's Office,*
 119 F. Supp. 2d 424 (S.D.N.Y. 2000) ..................................................................... 6

*Feliz v. Metro. Transp. Auth.*,
No. 16-9555, 2017 WL 5593517 (S.D.N.Y. Nov. 17, 2017) (Ramos, J.) ...............................3

*Fincher v. Depository Tr. & Clearing Corp.*,
604 F.3d 712 (2d Cir. 2010)...................................................................................................8

*Fraser v. MTA Long Island R.R.*,
295 F. Supp. 3d 230 (E.D.N.Y. 2018) ..................................................................................14

*Friedman as Tr. of Ellett Bros., LLC v. Nexien, Inc.*,
No. 21-3292, 2021 WL 5910763 (E.D.N.Y. Nov. 9, 2021) ...................................................20

*Gregg v. New York State Dep't of Taxation & Fin.*,
No. 97 Civ. 1408, 1999 WL 225534 (S.D.N.Y. Apr. 19, 1999).............................................18

*Harris v. Forklift Sys., Inc.*,
510 U.S. 17 (1993)................................................................................................................16

*Hishon v. King & Spalding*,
467 U.S. 69 (1984)..................................................................................................................6

*Ingrassia v. Health & Hosp. Corp.*,
130 F. Supp. 3d 709 (E.D.N.Y. 2015) ..................................................................................14

*Jakob v. JPMorgan Chase Bank, N.A.*,
No. 22-3921, 2023 WL 2386395 (E.D.N.Y. Mar. 7, 2023)...................................................20

*Lambert v. Trump Int'l Hotel & Tower*,
304 F. Supp. 3d 405 (S.D.N.Y. 2018)....................................................................................7

*Li v. Educational Broadcasting Corp.*,
No. 115948/2010, 2011 WL 3204689 (N.Y. Sup. Ct. June 30, 2011)...................................19

*Lucas v. S. Nassau Cmtys. Hosp.*,
54 F. Supp. 2d 141 (E.D.N.Y. 1998) ....................................................................................18

*Luka v. Bard Coll.*,
263 F. Supp. 3d 478 (S.D.N.Y. 2017)...................................................................................13

*Marseille v. The Mount Sinai Hosp.*,
No. 21-2140, 2022 WL 14700981 (2d Cir. Oct. 26, 2022)....................................................16

*Martin v. Walgreen
Co.*, No. 16-9658, 2018 WL 3773987 (S.D.N.Y. Aug. 9, 2018)............................................17

*Martinez v. N.Y.C. Dep't of Educ.*,
No. 04 Civ. 2728 (LTS), 2008 WL 2220638 (S.D.N.Y. May 27, 2008)..................................9

*Mendez-Nouel v. Gucci Am., Inc.*,
   542 F. App'x 12 (2d Cir. 2013) ................................................................19

*Miller v. Praxair, Inc.*,
   408 F. App'x 408 (2d Cir. 2010) ...............................................................6

*Milne v. Navigant Consulting*,
   No. 08 Civ. 8964 (NRB), 2009 WL 4437412 (S.D.N.Y. Nov. 30, 2009) ................8

*Min Kou Chenette v. Kenneth Cole Productions, Inc.*,
   345 F. App'x 615 (2d Cir. 2009) ...............................................................8

*Mohamed v. NYU*,
   No. 14-8373, 2015 WL 5307391 (S.D.N.Y. Sep. 10, 2015)...........................11

*Moore v. City of N.Y.*,
   No. 15-cv-6600 (GBD) (JLC), 2017 WL 35450 (S.D.N.Y. Jan. 3, 2017)............13

*Moore v. Verizon*,
   No. 13-cv-6467 (RJS), 2016 WL 825001 (S.D.N.Y. Feb. 5, 2016) ..................14

*Murdaugh v. City of New York*,
   No. 10 Civ. 7218, 2011 WL 1991450 (S.D.N.Y. May 19, 2011)....................11

*Murray-Dahnir v. Lowes Corp.*,
   No. 98 CIV. 9057 (LMM), 2000 WL 1119094 (S.D.N.Y. Aug. 8, 2000).........7, 11

*Neitzke v. Williams*,
   490 U.S. 319 (1989)..................................................................................5

*Ping Chow Wei v. Anthem Inc.*,
   No. 16-0468, 2018 WL 5622571 (E.D.N.Y. Sept. 4, 2018) .........................17

*Quinn v. Green Tree Credit Corp.*,
   159 F.3d 759 (2d Cir. 1998)......................................................................19

*Ramirez v. Temin & Co., Inc.*,
   No. 20-6258, 2021 WL 4392303 (S.D.N.Y. Sept. 24, 2021) (Ramos, J.) ...........11

*Robinson v. Harvard Prot. Servs.*,
   495 F. App'x 140 (2d Cir. 2012) ..............................................................16

*Russo v. New York Presbyterian Hosp.*,
   972 F. Supp. 2d 429 (E.D.N.Y. 2013) .......................................................19

*Shultz v. Congregation Shearith Israel of City of New York*,
   867 F.3d 298 (2d Cir. 2017)......................................................................6

*Smith v. N.Y. & Presbyterian Hosp.*,
    440 F. Supp. 3d 303 (S.D.N.Y. 2020)........................................................................17

*Stewart v. City of N.Y.*,
    No. 22-2775, 2023 WL 6970127 (2d Cir. Oct. 23, 2023)..........................................14

*Stewart v. Summit Health Mgmt., LLC*,
    No. 23-cv-04073, 2024 WL 3274687 (S.D.N.Y. July 1, 2024) (Ramos, J.) ...........13

*Thompson v. Spota*,
    No. 14-2473, 2018 WL 6163301 (E.D.N.Y. Aug. 23, 2018) ..................................17

*Tortorici v. Bus-Tev, LLC*,
    No. 17-CV-7507, 2021 WL 4177209 (S.D.N.Y. Sept. 14, 2021)............................16

*Tufano v. One Toms Point Lane Corp.*,
    64 F. Supp. 2d 119 (E.D.N.Y. 1999), *aff'd*, 229 F.3d 1136 (2d. Cir. 2000)............6

*Tulino v. Ali*,
    No. 15-CV-7106 (JSR), 2019 WL 1447134 (S.D.N.Y. Feb. 27, 2019), *aff'd*
    *sub nom. Tulino v. City of N. Y.*, 813 F. App'x 725 (2d Cir. 2020) ...........................8

*Vega v. Hempstead Union Free Sch. Dist.*,
    801 F.3d 72 (2d Cir. 2015)......................................................................................12

*Wells-Williams v. Kingsboro Psychiatric Ctr.*,
    No. 03-CV-134 (CBA), 2007 WL 1011545 (E.D.N.Y. Mar. 30, 2007)..................18

*Whidbey v. Garzarelli Food Specialties, Inc.*,
    223 F.3d 62 (2d Cir. 2000)......................................................................................12

*Williams v. Victoria's Secret*,
    No. 15-CV-4715 (PGG) (JLC), 2017 WL 384787 (S.D.N.Y. Jan. 27, 2017) ........15

*Woodcock v. Montefiore Med. Ctr. Univ. Hosp.*,
    No. 98-CV-4420, 2002 WL 403601 (E.D.N.Y. Jan. 28, 2002) .................................9

*Zick v. Waterfront Comm'n of N.Y. Harbor*,
    No. 11 Civ. 5093, 2012 WL 4785703 (S.D.N.Y. Oct. 4, 2012) ...........................7, 9

**Statutes**

NYCHRL ................................................................................................................1, 13, 16

NYSHRL................................................................................................................1, 12, 13, 16

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ...............................................................1, 5, 6

Federal Rule of Civil Procedure 26(c) ...........................................................................20

## PRELIMINARY STATEMENT

Defendant adMarketplace, Inc. ("adMarketplace" or the "Company"), by and through its attorneys, Morgan, Lewis & Bockius LLP, respectfully submits this Memorandum of Law in support of its Motion to Dismiss the Complaint filed by Plaintiff Alexandra Noh ("Plaintiff"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").[1]

In her Complaint ("Complaint" or "Compl.", at ECF No. 7), Plaintiff alleges that she worked at adMarketplace for approximately six months, four of which she was working remotely (as were all adMarketplace employees, due to the COVID-19 Omicron variant surge in late 2021-early 2022). Plaintiff alleges that, in those short months, her former manager, Eugene Kilberg ("Kilberg"), sexually and racially harassed her, which she first reported to the Company in late March 2022. Although Plaintiff does not allege that she had any further contact with Kilberg after she reported her complaints to the Company,[2] she alleges that, because his conduct created an intolerable environment and she was not allowed to work remotely permanently, she was "forced" to resign from adMarketplace a month later. Plaintiff's allegations, even if true, fail to state a cognizable claim under Title VII, the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL"). Accordingly, the Complaint must be dismissed in its entirety.

First, while Plaintiff asserts that she was constructively discharged, she fails to allege facts that adMarketplace deliberately made her working conditions so intolerable that any reasonable person would have felt compelled to resign – let alone on the basis of her race, sex or any other

---

[1] At the July 9, 2024, pre-motion conference, Your Honor gave Plaintiff the opportunity to amend her Complaint prior to the filing of this Motion. Plaintiff chose not to amend her Complaint to cure the deficiencies that Defendants noted in their respective pre-motion conference letters.

[2] Plaintiff's Complaint makes no mention of Mr. Kilberg's termination by adMarketplace on March 31, 2022, two days after Plaintiff complained about him and well before her resignation in late April 2022. *See* Compl. ¶ 64. While a motion to dismiss requires treating all allegations as true, it does not require overlooking a failure to mention such a critical fact.

protected category (or activity).[3]  Indeed, Plaintiff does not allege (because she cannot) that she had any further contact with Kilberg, or he had any involvement in the terms and conditions of her employment, following her internal report to the Company about him.  Plaintiff's legal position seems to be that her working conditions were tolerable while she was working remotely, but the Company's expectation that she return to the office rendered her working conditions intolerable because she felt "triggered by the physical space."  (Compl. ¶ 62, 64).  In support of this position, she alleges no details about when adMarketplace began communicating with her (and all other employees) about returning to the office, let alone any allegation that those communications (a) were specific to her and (b) only began after she complained about Kilberg. Most importantly, Plaintiff does not allege that the intolerable conditions in the office included being in physical proximity to Kilberg. Because Plaintiff fails to (and cannot) plead that her working conditions were objectively intolerable or that adMarketplace deliberately forced her to resign because of any protected category or activity, her constructive discharge claims should be dismissed.

Second, Plaintiff fails to state a claim of race or gender discrimination (or retaliation) because she fails to plausible claim that any adverse employment action occurred under circumstances from which an inference of discrimination (or retaliation) may be adduced.  Indeed, the majority of the complained-of actions are not adverse employment actions as a matter of law and Plaintiff does not allege (nor could she) that she was the only employee who was required to

---

[3] Although Plaintiff attempts to now paint her claim as a retaliatory constructive discharge (*see* Plaintiff's Response to Defendants' Pre-Motion Conference Letters, at ECF No. 21) nothing in the Complaint supports such a cause of action.  The word "retaliation" appears only once in Plaintiff's Complaint, and the Complaint does not even plead the elements of a retaliation claim. The Complaint's reference to "retaliation" makes clear that Plaintiff alleges that Kilberg retaliated against her, not adMarketplace.  Compl. ¶ 82.  Even if Plaintiff's Complaint could be read to assert a claim for retaliation against adMarketplace, it fails for the reasons noted herein.

return to the office. In fact, Plaintiff pleads no facts to support a conclusion that the Company's request she return to the office was caused in any way by her complaint about Kilberg.

Finally, Plaintiff does not offer sufficient facts demonstrating that she suffered a hostile work environment, as the incidents that she alleges are nothing more than petty slights or trivial inconveniences.

Accordingly, adMarketplace's Motion should be granted and Plaintiff's Complaint should be dismissed in its entirety. Further, discovery should be stayed during the pendency of the instant Motion.

## STATEMENT OF RELEVANT FACTS ALLEGED[4]

In the Complaint, Plaintiff alleges that she worked at adMarketplace as a UI/UX Product Designer from October 26, 2021 to April 2022. Compl. ¶ 14, 64. During that time, Plaintiff alleges that she reported to Kilberg. *Id.* ¶ 16.

Plaintiff alleges that she worked in the office for approximately a two-month period, before all employees "began working remotely due to the prevalence of the Omicron variant of COVID-19." Compl. ¶ 19, 36.) She further alleges that, while working in the office, Kilberg put his hand over her hand on 10 occasions to move her computer mouse. Compl. ¶ 19. Plaintiff also alleges that Kilberg would also speak to Plaintiff very closely, and on one occasion made a comment that referenced Plaintiff's race. Compl. ¶¶ 21, 24. Plaintiff alleges that Kilberg made various comments that she believes were gender based and sexually harassing. Compl. ¶¶ 25, 33. The comments that Plaintiff believes were sexually harassing include: (1) Kilberg telling her "you're such a good girl;" (2) Kilberg asking her if it was "her time of the month;" (3) Kilberg commenting

---

[4] The following factual allegations are taken from the Complaint and are assumed to be true <u>only</u> for purposes of this Motion. *See Feliz v. Metro. Transp. Auth.*, No. 16-9555, 2017 WL 5593517, at *2 (S.D.N.Y. Nov. 17, 2017) (Ramos, J.).

"I know why! That's biology!" when plaintiff complained about the office's temperature; (4) Kilberg commenting that Plaintiff "shouldn't eat so much, or you'll get too big;" (5) Kilberg telling her that he did not get her a backpack "because you girls only like brand name things."[5] Compl. ¶¶ 28, 30, 32, 34-35.

Plaintiff alleges that between January and February 2022, while adMarketplace employees were working remotely, Kilberg "berated" her in virtual meetings, and that she observed a picture of a naked woman on Kilberg's wall. Compl. ¶¶ 41-48.

On March 29, 2022, Plaintiff reported Kilberg's alleged "sexual harassment, gender and race discrimination" to adMarketplace's Director of Human Resources, Claire Luckner. Compl. ¶ 57. The following day, Plaintiff reported Kilberg's conduct to George Pappachan, Head of Business and Legal Affairs. Compl. ¶ 50. Plaintiff does *not* allege that, following these meetings, she ever saw or had any contact with Kilberg ever again, or that Kilberg had any involvement concerning the terms and conditions of her employment, for the rest of her employment at adMarketplace. *See generally* Compl.

Plaintiff alleges that, on April 4, 2022, she discussed her allegations against Kilberg with Kilberg's manager, Steven Read, and asked Read not to be "forced to come back to the office" from her purported arrangement to work remotely "indefinitely." Compl. ¶¶ 60-62. Plaintiff does *not* allege in the Complaint: (1) when and how this purported arrangement to work remotely "indefinitely" arose; (2) that she was not previously requested to return to the office prior to, or that she was only requested to work from the office after, her report about Kilberg; (3) that she was the only employee adMarketplace required to return to the office around that time – or even one of just a few; (4) that the Company was unwilling to work with her on a temporary hybrid

---

[5] Plaintiff alleges that Kilberg made other comments that she found to be offensive, but on their face they are neutral as to gender or race. Compl. ¶¶ 34, 38, 39, 54-55.

schedule while she made family care arrangements; or (5) that she actually ever returned to the office after her internal complaint about Kilberg.  *See generally* Compl. Plaintiff alleges that, a few weeks later, at the end of April 2022, because of purported "neglect and insufficient response to her reports of discrimination," she resigned from adMarketplace.  Compl. ¶¶ 94-95, 103.

## RELEVANT PROCEDURAL HISTORY

Plaintiff commenced this action by filing a Complaint on March 21, 2024. ECF No. 7. Plaintiff alleges in her Complaint that she "commenced this action within 90 days of the issuance of the Notice of Right to Sue by the EEOC," which she claims she received from the Equal Employment Opportunity Commission ("EEOC") on March 21, 2024.  Compl. ¶ 5.  Plaintiff does not attach a copy of the EEOC's Notice of Right to Sue letter to the Complaint.[6]  *See* Compl.

## ARGUMENT

### I.    STANDARD OF REVIEW

The purpose of Fed. R. Civ. P. 12(b)(6) is to "streamline litigation by dispensing with needless discovery and fact-finding" and eliminating baseless claims.  *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).  Thus, where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).  In assessing a motion under Rule 12(b)(6), although "a court must accept as true all of the allegations contained in a complaint," that "tenet" "is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by

---

[6] If Plaintiff's claims are not dismissed in their entirety for the reasons set forth in this Motion, discovery may be necessary to determine when Plaintiff actually received the Right to Sue Letter.  Plaintiff's allegations do not include detail about how she purportedly received the Right to Sue letter in 2024. EEOC records, however, suggest that the EEOC issued the Right to Sue letter on March 16, 2023, that Plaintiff received notice that same day and that Plaintiff downloaded the Right to Sue Letter the next day.   Although additional discovery on this point is necessary, Defendant does not waive, and specifically reserves, all potential defenses and arguments concerning this issue.

mere conclusory statements, do not suffice." *Id*.  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss," and "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.  That is to say, if it appears from the face of the complaint that a plaintiff cannot prove a set of facts that would entitle him or her to the relief sought, the court should dismiss the plaintiff's claims.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  Moreover, where a plaintiff alleges violations of a civil rights statute, the allegations in the complaint must contain specific violations and not merely "'a litany of general conclusions that shock but have no meaning.'"  *Tufano v. One Toms Point Lane Corp*., 64 F. Supp. 2d 119, 123 (E.D.N.Y. 1999), *aff'd*, 229 F.3d 1136 (2d. Cir. 2000) (*quoting Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)).  As demonstrated herein, Plaintiff's Complaint does not meet these standards.

## II.  PLAINTIFF'S ALLEGATIONS FALL MARKEDLY SHORT OF WHAT IS REQUIRED TO PLEAD A PLAUSIBLE CONSTRUCTIVE DISCHARGE CLAIM.

Despite Plaintiff's characterization of her departure from adMarketplace as a "constructive discharge," the factual allegations in the Complaint do not support such a claim, which requires pleading facts showing that the employer *deliberately* caused "working conditions [to] become so intolerable that a reasonable person in the employee's position would have felt compelled to resign."  *Shultz v. Congregation Shearith Israel of City of New York*, 867 F.3d 298, 308 (2d Cir. 2017); *Dean v. Westchester Cnty. Dist. Attorney's Office*, 119 F. Supp. 2d 424, 430 (S.D.N.Y. 2000).  None of Plaintiff's allegations even remotely meet this "demanding" standard.  *See Miller v. Praxair, Inc.*, 408 F. App'x 408 (2d Cir. 2010) (concluding that "the [constructive discharge] standard is a demanding one").

A discriminatory constructive discharge claim will only survive a motion to dismiss "if the operative complaint sufficiently alleges that: (1) [plaintiff's] working conditions at [defendant]

were so intolerable that a reasonable person in his position would resign; and (2) motivated by [racial/gender based] animus, [defendant] deliberately created these conditions in order to force [plaintiff] to resign." *Murray-Dahnir v. Lowes Corp.*, No. 98 CIV. 9057 (LMM), 2000 WL 1119094, at *1 (S.D.N.Y. Aug. 8, 2000).  In other words, Plaintiff must plead facts sufficient to show that "[her] employer, rather than discharging [her] directly, *intentionally* creates a work atmosphere so *intolerable* that [s]he is *forced* to quit involuntarily." *Zick v. Waterfront Comm'n of N.Y. Harbor*, No. 11 Civ. 5093, 2012 WL 4785703 (S.D.N.Y. Oct. 4, 2012) (emphasis added).

Here, the allegations in the Complaint fall woefully short of the high bar for constructive discharge claims, as Plaintiff has not alleged that her working conditions at adMarketplace were so intolerable that a *reasonable* person would have felt compelled to resign — let alone that adMarketplace deliberately created such conditions on the basis of her race or sex (or any protected activity).

A.    ***Plaintiff Has Not Alleged Intolerable Work Conditions That Would Force A Reasonable Person To Resign***

Plaintiff advances three categories of allegations in support of her constructive discharge claim.  All fail as a matter of law.

First, Plaintiff alleges in the Complaint that Kilberg's alleged harassment resulted in her constructive discharge.[7]  As detailed below (Section V, *infra*), Kilberg's alleged conduct is insufficient to show an actionable hostile work environment and, thus, also cannot support a constructive discharge claim.  *See Lambert v. Trump Int'l Hotel & Tower,* 304 F. Supp. 3d 405,

---

[7] In her premotion letter (ECF No. 21), Plaintiff argued that "Plaintiff Has Pled a Retaliation Claim via Constructive Discharge" and cited to Kilberg's alleged harassment in support of this assertion.  This argument is, of course, non-sensical, as Plaintiff alleges that she first reported Kilberg's alleged conduct in late March 2022 and does not allege having further contact (let alone that any further harassment occurred) between her report and her resignation in April 2022, defeating a retaliation claim (including retaliatory constructive discharge) based on any alleged harassment by Kilberg.  *See Cayemittes v. City of New York Department of Housing Preservation & Development*, 974 F. Supp. 2d 240, 262 (S.D.N.Y. 2013), *aff'd*, 641 F. App'x 60 (2d Cir. 2016) (finding that adverse employment action cannot serve as the basis for a retaliation claim if the retaliatory action occurred prior to the protected activity).

427 (S.D.N.Y. 2018) ("when an individual has failed to allege a hostile work environment, [her] constructive discharge claim based on those allegations must also fail"); *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 725 (2d Cir. 2010) ("The standard [for constructive discharge] is higher than the standard for establishing a hostile work environment. Because [plaintiff] failed to establish a hostile work environment, her claim of constructive discharge also fails."); *Min Kou Chenette v. Kenneth Cole Productions, Inc.*, 345 F. App'x 615, 620 (2d Cir. 2009) ("Having failed on her hostile work environment claim, [plaintiff] can neither survive summary judgment on her constructive discharge claim") (citation omitted).

Moreover, even if her hostile work environment claims survive dismissal (and they should not), Plaintiff's allegations are still insufficient to show an intolerable work environment that would force a reasonable person to resign. Indeed, the lone allegedly racially-based comment that Plaintiff alleges is simply insufficient to show intolerable work conditions based on race and the remaining alleged comments cannot sustain a constructive discharge on the basis of sex. *See Tulino v. Ali*, No. 15-CV-7106 (JSR), 2019 WL 1447134 (S.D.N.Y. Feb. 27, 2019), *aff'd sub nom. Tulino v. City of N. Y.*, 813 F. App'x 725 (2d Cir. 2020) (dismissing constructive discharge claim where plaintiff's supervisor repeatedly invited plaintiff out for dates, followed up with passive aggressive emails when not answered about said dates, exercised excessive control over Plaintiff's schedule, tried to kiss plaintiff on two occasions, and told her that female employees were "expected to engage in sexual activity to advance professionally."); *Milne v. Navigant Consulting*, No. 08 Civ. 8964 (NRB), 2009 WL 4437412, at *9 (S.D.N.Y. Nov. 30, 2009) (finding that plaintiff pled did not sufficiently plead an intolerable work place where plaintiff claimed that supervisor made sexually inappropriate jokes and suggestive comments, as well as another manager physically grabbed her arm and made suggestive comments). This is particularly true where, as

here, Plaintiff does not allege (nor could she) that she had any further contact with Kilberg, or that he had any involvement whatsoever concerning her employment, following her report about his alleged conduct approximately a month prior to her resignation. *Woodcock v. Montefiore Med. Ctr. Univ. Hosp.*, No. 98-CV-4420, 2002 WL 403601, at *7 (E.D.N.Y. Jan. 28, 2002) (finding no constructive discharge where plaintiff resigned months after most of the incidents upon which the constructive-discharge claim was premised).

Second, Plaintiff's claims that Kilberg allegedly berated her are insufficient to establish a plausible constructive discharge claim. This is because "[b]eing unfairly criticized by a supervisor simply does not rise to the level of intolerability such that a reasonable person would have felt compelled to resign." *See Catania v. NYU Langone Health Sys.*, No. 22-4362, 2022 WL 17539121, at *4 (S.D.N.Y Dec. 5, 2022) (granting motion to dismiss constructive discharge claim where plaintiff alleged that supervisor belittled her, ostracized her, spoke to her in a passive-aggressive manner, scheduled one-on-one meetings merely to belittle and scold her.); *see, e.g., Martinez v. N.Y.C. Dep't of Educ.*, No. 04 Civ. 2728 (LTS), 2008 WL 2220638 , at *12 (S.D.N.Y. May 27, 2008) ("[I]ncidents where [a supervisor] publicly yelled at [the plaintiff] for various reasons or called him 'shit' . . . constitute, as a matter of law, the sorts of petty slights and personality conflicts that are not actionable."); *Zick*, 2012 WL 4785703, at *2, *7-8 (finding that employee failed to state a claim for constructive discharge when employee's boss threatened to have her bar license removed, berated her while she was working from home after an injury, and gave her the option of resigning by 9 a.m. the next day or being suspended). And, once again, Plaintiff does not allege (because she cannot) that she had any further contact with Kilberg between her report and her resignation a month later.

Third, Plaintiff's claim that, after her internal complaint about Kilberg, adMarketplace constructively discharged her by denying her request to continue working remotely similarly fails. In her premotion letter (ECF No. 21), Plaintiff argued that the request to return to the office was retaliatory. Her argument seems to be premised on a novel legal theory building on the conclusory assertion that Plaintiff "had previously been granted the ability to work from home indefinitely" (Compl. ¶ 62), and then conflating a requirement to join her colleagues back in the office with "retaliation." Compl. ¶¶ 60-62. However, Plaintiff does not allege when and how this alleged entitlement to remotely "indefinitely" even came from. Nor could she, as Plaintiff's Complaint makes clear that the reason why employees of adMarketplace, including Plaintiff, were working from home for a period of time was due to the Omicron variant of COVID-19. Compl. ¶ 36. As Plaintiff fails to plead the purported basis for her alleged right to work from home "indefinitely," any claim premised on requiring her to return to the office cannot stand.[8]

Additionally, Plaintiff does not allege that Kilberg remained employed by adMarketplace after her internal complaint – let alone employed as her supervisor. Nor does she allege that she did not want to return to the office for fear of seeing him. Rather, in her promotion letter (ECF No. 21), she asserts that "[a]ny reasonable person" would have resigned rather than return to "the physical environment where this abuse transpired." In other words, not only does she allege a conclusory factual statement that she had been "granted the ability to work from home indefinitely" (Compl. ¶ 62), but also advances a legal theory contending that she obtained the permanent right to work from home as a result of events within the walls of the office over a period of approximately two months – regardless of what subsequent steps the Company took to address

---

[8] Indeed, there is no legal duty to consider or provide any "accommodation" (including remote work) outside the context of a legally recognized disability, for certain religious reasons or in certain domestic violence situations – none of which are alleged here.

her complaint after she raised it. Neither Plaintiff's factual nor legal overstatements are sufficient to establish that the conditions of Plaintiff's very short-lived employment were intolerable such that that a "reasonable person in the [Plaintiff's] shoes would have felt compelled to resign." *Ramirez v. Temin & Co., Inc.*, No. 20-6258, 2021 WL 4392303, at *8 (S.D.N.Y. Sept. 24, 2021) (Ramos, J.).

B.     ***Plaintiff Has Not Sufficiently Pled Facts That Defendant Deliberately Created Intolerable Conditions On The Basis Of Any Protected Category or Activity***.

Even if Plaintiff's working conditions were of such severity as to rise to the level of intolerability (and they do not), "[m]issing in the present complaint, and fatal to the constructive discharge claim, is any allegation" that the actions taken against Plaintiff were "part of a campaign to force [Plaintiff] to resign" because of her race or gender, or any alleged protected activity. *Murray-Dahnir*, 2000 WL 1119094, at *2 (S.D.N.Y. Aug. 8, 2000) (granting motion to dismiss where allegations fail "to articulate the racial animus necessary to support" a constructive discharge claim). Plaintiff has not alleged a single fact to show that, *motivated by discriminatory or retaliatory animus,* adMarketplace intentionally created intolerable work conditions *designed to force* her to resign. *See Mohamed v. NYU*, No. 14-8373, 2015 WL 5307391, at *4-5 (S.D.N.Y. Sep. 10, 2015) (dismissing plaintiff's constructive discharge claims because plaintiff did not plead facts showing discriminatory animus); *Murdaugh v. City of New York*, No. 10 Civ. 7218, 2011 WL 1991450, at *2 (S.D.N.Y. May 19, 2011) (constructive discharge claim dismissed where plaintiff failed to allege any deliberate acts taken for the purpose of forcing plaintiff to resign).

While Plaintiff conclusorily alleges that adMarketplace insufficiently responded to her reports of harassment and was neglectful. (Compl. ¶ 64) she does not specify in what ways adMarketplace was neglectful or what the insufficiency was with adMarketplace's response to her internal report. To the contrary, she does not and cannot allege that adMarketplace allowed

Kilberg to have any contact with her, or to have any involvement in the terms and conditions of her employment, after her internal report.  In any case, Plaintiff's bare allegation is insufficient to survive dismissal as a matter of law because a constructive discharge claim requires conduct by defendant "beyond mere negligence or ineffectiveness."  *Whidbey v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 74 (2d Cir. 2000).

Moreover, Plaintiff's allegations do not plausibly show that, by allegedly denying her request to work remotely indefinitely, adMarketplace deliberately created intolerable work conditions designed to force Plaintiff to quit *on the basis of* her race, gender or complaint about Kilberg.   Indeed, Plaintiff does not allege (nor could she) that: (1) adMarketplace first requested that she return to the office *after* she reported Kilberg's alleged conduct, as required for any purported claim of "retaliation via constructive discharge" (ECF No. 21, pp. 1-2); or (2) adMarketplace did not similarly require other employees (of all races and genders, and who had not made complaints of harassment) to return to the office in the spring of 2022, as needed to support a race/gender discrimination claim.

Simply stated, Plaintiff's allegations fall well short of asserting a plausible claim that adMarketplace deliberately, on the basis of any protected category or activity, created working conditions that were so intolerable that a reasonable person would have felt compelled to resign. Accordingly, Plaintiff's constructive discharge claim should be dismissed.

III.    <u>PLAINTIFF FAILS TO STATE A CLAIM OF RACE OR GENDER DISCRIMINATION.</u>

Plaintiff also fails to state a plausible claim for race or gender discrimination.  Under Title VIIand the NYSHRL, to survive a motion to dismiss, Plaintiff must support her race and gender discrimination claims with factual allegations showing that: (1) she suffered an adverse action and (2) her race or gender was a motivating factor in the employment decision. *Vega v. Hempstead*

*Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015) (describing elements of a *prima facie* claim under Title VII at the motion to dismiss stage); *Stewart v. Summit Health Mgmt., LLC*, No. 23-cv-04073, 2024 WL 3274687, at *4 (S.D.N.Y. July 1, 2024) (Ramos, J.) (describing pleading requirements under NYSHRL to survive motion to dismiss).   Under the NYCHRL, Plaintiff is likewise "required to plead evidence from which discrimination can be inferred to support a claim that [he was] treated less well at least in part because of [her race or gender]."   *Moore v. City of N.Y.*, No. 15-cv-6600 (GBD) (JLC), 2017 WL 35450, at *22 (S.D.N.Y. Jan. 3, 2017), *report and recommendation adopted*, No. 15-cv-6600 (GBD) (JLC), 2017 WL 1064714 (S.D.N.Y. Mar. 20, 2017) (same).   To establish an inference of discrimination, Plaintiff must allege facts, as opposed to bare conclusions, such as invidious or discriminatory comments, more favorable treatment of others outside her protected class, from which it can be inferred that either adMarketplace or Kilberg's actions were motivated by Plaintiff's race or gender.   *See Appleton v. City of New York*, Index No. 157849/2017, 2019 WL 1206347, at *7 (Sup. Ct. N.Y. County, March 14, 2019).

Here, with respect to her race discrimination claims, Plaintiff has not pled that any person outside of her race (Asian) was treated better than her.   *See De La Pena v. Metro Life. Ins. Co.*, 953 F. Supp. 2d 393, 413-14 (E.D.N.Y 2013) (dismissing race discrimination claims where Plaintiff did not allege any similarly situated-comparator or race-based remarks close in time to his termination).   Nor has Plaintiff alleged any specific discriminatory comments from which an inference of discrimination can be drawn.   The only comment that Plaintiff alleges Kilberg made with respect to her race is that he said to her "Lexy, your figure is so different from the Asian girls I've dated."   Even assuming, *arguendo*, that this comment constitutes evidence from which discrimination can be inferred, there is no allegation that it was tied to any employment action towards Plaintiff. Therefore, it is insufficient to show discriminatory intent.   *See Luka v. Bard*

13

*Coll.*, 263 F. Supp. 3d 478, 487 (S.D.N.Y. 2017) (finding stray remarks did not give rise to an inference of discrimination when the remarks were not related to the employment decision being challenged); *Moore v. Verizon*, No. 13-cv-6467 (RJS), 2016 WL 825001, at *9 (S.D.N.Y. Feb. 5, 2016) (finding negative comments and insults non-actionable stray remarks where plaintiff did not allege they "played any part in Plaintiff's alleged adverse employment actions."). As such, Plaintiff's race discrimination claims fail and should be dismissed.

Similarly, Plaintiff's gender discrimination claims should be dismissed because Plaintiff fails to sufficiently plead an actionable adverse action stemming from her alleged treatment. *See, e.g.*, *Stewart v. City of N.Y.*, No. 22-2775, 2023 WL 6970127, at *2 (2d Cir. Oct. 23, 2023) ("criticism, verbal reprimands, and notices of potential discipline, by themselves, do not qualify as adverse employment actions"). All that Plaintiff alleges with respect to her gender discrimination claim is that David Naboa was treated differently than her in that she never observed Kilberg make certain comments to Naboa, Kilberg gave him a backpack, Kilberg did not approach him for a 1-on-1 meeting on one occasion where he asked Plaintiff for one, and Kilberg did not stand close to Naboa. Compl. ¶¶ 29, 31, 35, 50, 22. These actions are not cognizable adverse employment actions and did not impact the terms and conditions of Plaintiff's employment in any way. *See Ingrassia v. Health & Hosp. Corp.*, 130 F. Supp. 3d 709, 720 (E.D.N.Y. 2015) (finding that absent "demotion, reduction of pay, or reduction of job responsibilities . . . constant insults and comments" made by supervisors did not amount to an adverse employment action for the purposes of a discrimination claim); *Fraser v. MTA Long Island R.R.*, 295 F. Supp. 3d 230, 258 (E.D.N.Y. 2018) ("Criticism of an employee in the course of evaluating and correcting her work is not, in itself, a materially adverse employment action.") (quotation and citation omitted).

Plaintiff also fails to sufficiently plead that any of these alleged acts occurred because of her gender. The only specific date that Plaintiff can point to as to when she was "berated" by Kilberg was March 22 or 23, 2024. Compl. ¶ 43. This is months after any comment made by Kilberg that remotely relates to Plaintiff's gender. In fact, all of Kilberg's alleged gender specific comments appear to have occurred in office, prior to when Company employees started to work remotely in December 2021. Compl. ¶¶ 24, 28, 30, 32, 34, 35. Taking the timing, content, and context of Kilberg's alleged remarks into consideration, the comments are unrelated to any allegedly adverse employment action and do not establish an inference of discrimination. *See Williams v. Victoria's Secret*, No. 15-CV-4715 (PGG) (JLC), 2017 WL 384787, at *9 (S.D.N.Y. Jan. 27, 2017) (noting that "negative remarks about an individual's attributes do not demonstrate the requisite discriminatory intent where there is no 'causal nexus' between the comments and the decision to terminate the plaintiff" and dismissing federal, state, and local age discrimination claims premised on stray remarks not linked to an employment decision), *report and recommendation adopted*, 2017 WL 1162908 (S.D.N.Y. Mar. 28, 2017).

Similarly, Plaintiff fails to plead any facts to suggest that the purported denial to work from home indefinitely was in any way tied to her race or gender. To the contrary, Plaintiff does not allege (nor could she) that: (1) Kilberg had any involvement in her remote work request (he did not); (2) she was the only adMarketplace employee requested to return to the office (she was not); or (3) similarly-situated employees of other races or genders were allowed to work remotely indefinitely. These deficiencies are fatal to Plaintiff's discrimination claims.

In sum, because Plaintiff has failed to sufficiently plead facts that she suffered any adverse employment action based race or gender, her discrimination claims should be dismissed.

**IV.    PLAINTIFF FAILS TO STATE A CLAIM OF A HOSTILE WORK ENVIRONMENT**

To plead a hostile work environment claim under Title VII (*see* FN 10), Plaintiff must plead "that the complained of conduct (1) is objectively pervasive – that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's protected characteristic." *Robinson v. Harvard Prot. Servs.*, 495 F. App'x 140, 141 (2d Cir. 2012).  Courts must look at the totality of the circumstances to determine whether an environment is "hostile" or "abusive" and should consider the following non-exclusive list of factors: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's "work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). There must also be a showing that the conduct occurred because of the employee's membership in a protected class. *Brennan v. Metro Opera Ass'n.*, 192 F.3d 310, 318 (2d Cir. 1999).

Under the NYSHRL and NYCHRL, Plaintiff must plausibly allege that she was treated less well than other employees because of her protected status. *See Askin v. Dep't of Educ. of the City of New York*, 110 A.D.3d 621, 622 (1st Dep't 2013). Even under the NYSHRL and the NYCHRL, the conduct complained of must "exceed[ed] 'what a reasonable victim of discrimination would consider petty slights and trivial inconveniences,' and 'mere personality conflicts' will not suffice."  *See Marseille v. The Mount Sinai Hosp.*, No. 21-2140, 2022 WL 14700981, at *2 (2d Cir. Oct. 26, 2022); *Tortorici v. Bus-Tev, LLC*, No. 17-CV-7507, 2021 WL 4177209, at *13 (S.D.N.Y. Sept. 14, 2021).   "Thus, isolated incidents of unwelcome verbal and physical conduct have been found to constitute the type of 'petty slights and trivial inconveniences'

that are not actionable even under the more liberal [] standard." *Ping Chow Wei v. Anthem Inc.*, No. 16-0468, 2018 WL 5622571, at *8 (E.D.N.Y. Sept. 4, 2018) (alterations and citations omitted).

Here, the conduct Plaintiff complains of is the type of trivial inconveniences that are not actionable under any of the laws at issue. First, any race based hostile work environment claim fails because Plaintiff can only point to one race-based comment made over the course of her six months of employment at adMarketplace. *See Smith v. N.Y. & Presbyterian Hosp.*, 440 F. Supp. 3d 303, 347 (S.D.N.Y. 2020) (granting summary judgment on hostile work environment claims where two statements to employee were isolated and "episodic") (citation omitted); *Martin v. Walgreen* Co., No. 16-9658, 2018 WL 3773987, at *5 (S.D.N.Y. Aug. 9, 2018) (allegations that supervisors called plaintiff a "monkey" and a "black dog" were not sufficiently severe or pervasive to create a hostile work environment); *Thompson v. Spota*, No. 14-2473, 2018 WL 6163301, at *34-35 (E.D.N.Y. Aug. 23, 2018) (alleged comment that plaintiff was "a monkey in a suit" did not constitute "objectively severe or pervasive conduct"); *accord D.C. v. Copiague Union Free Sch. Dist.*, No. 16- 4546, 2017 WL 3017189, at *1, *10 (E.D.N.Y. July 11, 2017) (allegations plaintiff was told "come here, monkey" and that another student drew a picture of plaintiff as a monkey in a tree were "not sufficiently severe or pervasive to state a claim [for a hostile environment] arising under Title VII"). At best, Kilberg's single comment that referenced Plaintiff's race is a "petty slight" or "trivial inconvenience," insufficient to sustain a hostile work environment claim.

The same is true with respect to Plaintiff's alleged gender based hostile work environment claims. At most Plaintiff pleads that over the course of 6 months, 4 of which were during a period that she was working remotely, Kilberg made boorish remarks about gender,[9] showed her a photo

---

[9] The comments that Kilberg allegedly made about Plaintiff's gender appear to have been made during the two months that Plaintiff was working in office. Compl. ¶¶ 24, 28, 30, 32, 34, 35.  adMarketplace assumes that these comments occurred during those two months because some of the comments specifically reference in office

of a nude woman during a remote meeting, and touched her hand when moving a computer mouse. At no point does Plaintiff allege that Kilberg tried to initiate actual sexual contact with her, or solicited a sexual relationship from her.  The type of conduct alleged here is a series of isolated incidents which fall short of the standard required to establish a hostile work environment.  Indeed, courts in this District have dismissed hostile work environment claims based on conduct that was as serious or more serious than the alleged conduct at issue in this case.  *See Wells-Williams v. Kingsboro Psychiatric Ctr.*, No. 03-CV-134 (CBA), 2007 WL 1011545, at *5 (E.D.N.Y. Mar. 30, 2007) (dismissing hostile work environment claim where a coworker allegedly "made obscene gestures and language using a cucumber and tomatoes," in addition to other verbal incidents and physical contact); *Gregg v. New York State Dep't of Taxation & Fin.*, No. 97 Civ. 1408, 1999 WL 225534, at *12 (S.D.N.Y. Apr. 19, 1999) (holding that ten to fifteen allegedly inappropriate conversations, four minor instances of allegedly offensive touching, including stroking plaintiff's arm and neck and patting his behind, and repeated invitations to meals, drinks, and the alleged harasser's home over three to four months were not "sufficiently severe or pervasive"); *Lucas v. S. Nassau Cmtys. Hosp.*, 54 F. Supp. 2d 141, 148 (E.D.N.Y. 1998) (holding that brushing up against plaintiff on three occasions, touching plaintiff's hand on three occasions, touching plaintiff's back or shoulder briefly on five to seven occasions, suggesting that plaintiff "wanted to go to bed with [harasser]," asking plaintiff the color of plaintiff's underwear on two to three occasions, and saying "fuck you" on two occasions were not sufficient to constitute a hostile work environment); *Dayes v. Pace Univ.*, No. 98-3675, 2000 WL 307382, at *1, *4–5 (S.D.N.Y. Mar. 24, 2000), *aff'd*, 2 F. App'x 204 (2d Cir. 2001) (dismissing harassment claim where plaintiff was subjected to six sexual comments and multiple requests for dates, was screamed at by a supervisor,

---

interactions and/or because these allegations are plead prior to allegations concerning the December 2021 remote work policy.

and was touched on the back); *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759 (2d Cir. 1998) (no hostile work environment where plaintiff's alleged supervisor told her she had been voted the "sleekest ass" in the office and had "deliberately" touched her breasts with the papers in his hand); *Anderson v. Davis Polk & Wardwell LLP*, 850 F. Supp. 2d 392, 404 (S.D.N.Y. 2012) (no severe or pervasive conduct where plaintiff alleged his supervisor "would come around [his] cube on occasions and place her vagina literally on [his] left shoulder or inches from [his] face"); *Russo v. New York Presbyterian Hosp.*, 972 F. Supp. 2d 429, 453 (E.D.N.Y. 2013) (allegations that supervisor "made Plaintiff feel uncomfortable by brushing against her when allowing her to pass by him . . . and temporarily preventing her from retrieving [] equipment by trapping her with his leg" were mere petty slights) (collecting cases); *Mendez-Nouel v. Gucci Am., Inc.*, 542 F. App'x 12, 13 (2d Cir. 2013) (affirming grant of summary judgment on hostile work environment claim when allegations showed "two instances of touching, the more significant being an incident in which [plaintiff's] supervisor touched his lower back for four to five seconds," and "workplace banter about a supervisor's sexual orientation and nightlife," including one single occasion where a supervisor told plaintiff he was gay but did not know it); *See e.g.*, *Li v. Educational Broadcasting Corp.*, No. 115948/2010, 2011 WL 3204689, at *1 (N.Y. Sup. Ct. June 30, 2011) (finding that plaintiff's allegations that a co-worker approached him and, while stroking his arm, said "Asian skin is so soft…you love it when a hot guy like me touches you" and, a month later, grabbed his buttocks in the presence of another co-worker "too petty and trivial to rise to an actionable level").

Plaintiff has not sufficiently pled that the conduct she complains of is anything more than a series of petty slights and trivial inconveniences – and certainly not enough to create a severe or pervasive hostile work environment.  As such, Plaintiff's hostile work environment claims should be dismissed.

## V.   DISCOVERY SHOULD BE STAYED PENDING RESOLUTION OF DEFENDANT'S MOTION.

Under Federal Rule of Civil Procedure 26(c), district courts may stay discovery while a motion to dismiss is pending, if "good cause" is shown.  *Jakob v. JPMorgan Chase Bank, N.A.,* No. 22-3921, 2023 WL 2386395, at *1 (E.D.N.Y. Mar. 7, 2023) (citing *Friedman as Tr. of Ellett Bros., LLC v. Nexien, Inc.*, No. 21-3292, 2021 WL 5910763, at *2 (E.D.N.Y. Nov. 9, 2021).  In light of the significant merit of Defendant adMarketplace's arguments, the fully dispositive nature of Defendant adMarketplace's Motion, and the relative burden of engaging in discovery, good cause to stay discovery for the pendency of this dispositive motion.  As set forth above, there are significant and fatal deficiencies in Plaintiff's Complaint which clearly warrant dismissal.  To impose the burden of discovery for claims that ought to be dismissed with prejudice would be unwarranted.  *Chesney v. Valley Stream Union Free Sch. Dist. No. 24,* 236 F.R.D. 113 (E.D.N.Y. 2006) (staying discovery where defendants' motion to dismiss raised significant questions regarding the merits of plaintiffs' claims).  Accordingly, discovery should be stayed during the pendency of the instant Motion.

### CONCLUSION

For all of the foregoing reasons, adMarketplace's Motion to Dismiss should be granted, together with such other and further relief as this Court deems appropriate.

Dated:   New York, New York            Respectfully submitted,
         July 30, 2024

                                       MORGAN, LEWIS & BOCKIUS LLP

                                       By:   */s/ Melissa C. Rodriguez*
                                             Melissa C. Rodriguez
                                             Maria Fernanda DeCastro
                                             101 Park Avenue
                                             New York, New York 10178

Tel.:  (212) 309-6000
Fax:  (212) 309-6001

*Attorneys for Defendant*
*adMarketplace*