**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
ALEXANDRA NOH,

                 Plaintiff,

       -against-                        Case No, 24-cv-02107 (ER)


ADMARKETPLACE, INC., and EUGENE KILBERG
*individually,*

                 Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x



**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**MOTIONS TO DISMISS**



Dated: New York, New York
      August 20, 2024




**PHILLIPS & ASSOCIATES,**
**ATTORNEYS AT LAW, PLLC**
Melissa Vo, Esq.
*Attorneys for Plaintiff*
45 Broadway, Suite 430
New York, New York 10006
(212) 248-7431

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES---------------------------------------------------------------------------------------------------------ii

PRELIMINARY STATEMENT -------------------------------------------------------------------------------------------------1

STATEMENT OF FACTS --------------------------------------------------------------------------------------------------------1

STANDARD OF REVIEW --------------------------------------------------------------------------------------------------------7

ARGUMENT---------------------------------------------------------------------------------------------------------------------------7

   **I.  CONSTRUCTIVE DISCHARGE**---------------------------------------------------------------------------------------7

      *A.  Plaintiff Has Alleged Defendants Deliberately Created an Intolerable Work Environment That Would Force a Reasonable Person to Resign*---------------------------------------------------------------------------------------------7

   **II.  PLAINTIFF SUFFICIENTLY PLEADS CLAIMS OF RACE DISCRIMINATION AND GENDER BASED SEXUAL HARASSMENT UNDER SECTION 1981, TITLE VII, NYSHRL, AND NYCHRL** ------------------------9

      *A.  Plaintiff's Complaint contains sufficient facts to plead a claim of race discrimination under Section 1981*------------ 9

      *B.  Plaintiff Has Successfully Pled A Claim For Gender Based Sexual Harassment, And Race/Color Discrimination Under Title VII, NYSHRL, and NYCHRL* ------------------------------------------------------------------------------ 11

         a.  Title VII ------------------------------------------------------------------------------------------------------------------ 11
         b.  Plaintiff's NYCHRL discrimination claims are properly pled. ------------------------------------------- 13
         c.  Plaintiff's NYSHRL discrimination claim is properly pled.------------------------------------------------ 14

   **III.  HOSTILE WORK ENVIRONMENT**----------------------------------------------------------------------------------- 15

      *A.  Plaintiff's Complaint contains sufficient facts to plead a claim of hostile work environment under Section 1981*--- 16

      *B.  Plaintiff's Complaint contains sufficient facts to plead a claim of hostile work environment under Title VII* -------- 17

      *C.  NYSHRL and NYCHRL*------------------------------------------------------------------------------------------------- 21

   **IV.  DEFENDANT ADMARKETPLACE IS VICARIOUSLY LIABLE AS THE COMPLAINT SUFFICIENTLY ALLEGES THAT DEFENDANT KILBERG HAD SUPERVISORY AUTHORITY OVER PLAINTIFF** ----- 23

      *A.  Defendant AdMarketplace is Vicariously Liable*------------------------------------------------------------------ 23

      *B.  Defendant AdMarketplace is Vicariously Liable under the NYSHRL and NYCHRL* ----------------------------- 24

   **CONCLUSION** ----------------------------------------------------------------------------------------------------------------- 25

## TABLE OF AUTHORITIES

**Cases**

*Antoine v Brooklyn Maids 26, Inc.*, 489 F.Supp.3d 68, 83 (EDNY 2020)....................................17

*Atkinson v. Prabhjat Singh*, No. 19-cv-3779, 2022 U.S. Dist. LEXIS 8203 (S.D.N.Y. Jan. 14, 2022)........9

*Bader v. Special Metals Corp.*, 985 F. Supp. 2d 291, 310 (N.D.N.Y. 2013)................................8

Batten v. Global Contract Servs., 2018 U.S. Dist. LEXIS 105327, at 14 (E.D.N.Y. 2018) ......................24

*Burlington Indus., Inc., v. Ellerth*, 524 U.S. 742 at 691-92 (1998) ................................22

*Cagino v. Levine*, 157 N.Y.S.3d 561, 564 (2021)..........................................................17

*Carter v. Verizon*, No. 13-cv-7579, 2015 U.S. Dist. LEXIS 6370 (S.D.N.Y. Jan. 20, 2015)....................26

*Chen v. City Univ. of N.Y.*, 2011 U.S. Dist. LEXIS 130094, at *2 (S.D.N.Y. Nov. 9, 2011)....................11

*City of Syracuse v. Onondaga County*, 464 F.3d 297, 308 (2d Cir. 2006) ........................................28

*Crawford v. Metropolitan Government of Nashville and Davidson County, Tenn.*, 555 U.S. 271, 278
(2009)........................................................................................................29

*D.C. v. Copiague Union Free Sch. Dist.*, No. 16-cv-4546 (SJF)(AYS), 2017 U.S. Dist. LEXIS 113253, at
*31 (E.D.N.Y. July 11, 2017) ........................................................................18

*Dawson v. New York City Transit Authority*, 624 Fed. Appx. 763 (2d Cir. Sept. 16, 2015) ....................23

*DeVore v. Neighborhood Hous. Servs. of Jamaica Inc.*, No. 15 Civ. 6218 (PKC), 2017 WL 1034787, at
*4 (EDNY Mar. 16, 2017) ..............................................................................12

*Dortz v. City of N.Y.*, 904 F. Supp. 127 (S.D.N.Y. 1995) ....................................................28

*Drees v. County of Suffolk*, 2007 U.S. Dist. LEXIS 46618, at 36 (E.D.N.Y. June 27, 2007)...........................22

*Felder v. United States Tennis Ass'n*, 27 F.4th 834, 848 (2d Cir. 2022)..............................10, 11

*Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 310 (2004) (quoting *Harris v. Forklift Sys., Inc.*, 510
U.S. 17, 21 (1993)). ....................................................................................21

*Gorokhovsky v. N.Y.C. Hous. Auth.*, 552 F.App'x 100, 102 (2d Cir. 2014)................................16

*Gregory v. Daly*, 243 F.3d 687 (2d Cir. 2001)................................................................19

*Hagan v. City of New York*, 39 F. Supp. 3d 481, 500 (S.D.N.Y. 2014)........................................23

Hall v. N.Y.C. DOT, 701 F. Supp. 2d 318 (E.D.N.Y. 2010) ....................................................23

*Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d Cir. 2000) ..........................................21

*Ilana Gamza-Machado de Souza v. Planned Parenthood Fed'n of Am., Inc.*, 2023 U.S. Dist. LEXIS
54305, *19-20 (SDNY 2023)..............................................................................25

*Jean-Louis v. Am. Airlines*, No. 08-cv-3898, 2010 U.S. Dist. LEXIS 77292 (E.D.N.Y. July 30, 2010)........21

*Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229 (2d Cir. 2007) ........................................19

*Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 548 (2d Cir. 2010) ..............................................13

*Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 161 (2d Cir. 1998)..................................................8

*Langford v. International Union of Operating Engineers*, Local 30, 765 F.Supp.2d 486 (S.D.N.Y. 2011)
...........................................................................................................28

*Lewis v. Roosevelt Island Operating Corp.*, 246 F. Supp. 3d 979, 990 (S.D.N.Y. 2017) ......................20

*Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)......................................12, 13

*Love v. Premier Util. Servs., LLC*, 186 F. Supp. 3d 248, 254 (E.D.N.Y. 2016)..............................21

*McHenry v. Fox News Network, LLC*, 510 F.Supp.3d 51, 66 (S.D.N.Y., 2020) ........................................16

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013) ........... 15, 16, 18, 27

*Mitura v. Finco Servs., Inc.*, 2024 U.S. Dist. LEXIS 11000, at *3 (S.D.N.Y. Jan. 22, 2024) ............ 11, 20

Morgan, 536 U.S. at 116 ........................................................................................................................ 21

*Napoli-Bosse v. GM LLC,* U.S. App. LEXIS 30073, at *2 (2d Cir. Nov. 13, 2023) ................................ 7

*Patane v. Clark*, 508 F.3d 106 (2d Cir. 2007) ................................................................................. 19, 20

*Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) ............................................................................... 22

*Phillips*, 515 F.3d at 245; *see also Wallace v. Federated Dep't Stores, Inc.*, 214 Fed. Appx. 142, 144 (3d. Cir. 2007) ....................................................................................................................................... 31

*Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014) ........................................................................ 22

*Redd v. N.Y. State Div. of Parole*, 678 F.3d 166 (2d Cir. 2012) ........................................................... 13

*Robert v. King*, No. 19-cv-2781, 2020 U.S. Dist. LEXIS 177648 (S.D.N.Y. Sept. 24, 2020) ..................... 19

*Scalera v. Electrograph Sys., Inc.*, 848 F. Supp. 2d 352, 373 (E.D.N.Y. March 26, 2012) ..................... 29

*Schafer v. Direct Energy Servs., LLC*, 845 F. App'x 81, 82 (2d Cir. 2021) ............................................. 7

*Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 609 (2d Cir. 2006) ............................................... 17

*Shultz v. Congregation Shearith Israel*, 867 F.3d 298 (2d Cir. 2017) ..................................................... 8

*Sletten v. LiquidHub, Inc.*, No. 13-cv-1146, 2014 U.S. Dist. LEXIS 94697 (S.D.N.Y. July 10, 2014) ..... 27

*Small v New York City Dept. of Educ.*, 650 F.Supp.3d 89, 98 (SDNY 2023) ......................................... 13

*Smith v. Xerox Corp.*, 196 F.3d 358, 372 n.1 (2d Cir. 1999) ................................................................. 17

*State Police v. Suders*, 542 U.S. 129, 133 (2004) (emphasis added) ...................................................... 21

Stofsky v. Pawling Cent. School Dist., 635 F.Supp.2d 272, 295 (S.D.N.Y. 2009) .................................. 29

*Stratton v. Dep't for the Aging for City of N.Y.*, 132 F.3d 869, 878 (2d Cir. 1997) ................................ 13

*Terry v. Ashcrof*t, 336 F.3d 128, 151-52 (2d Cir. 2003) ......................................................... 8, 22, 23

*Thacker v HSBC Bank USA, N.A.*, 1:22-CV-7120-GHW, 2023 WL 3061336, at *5 (SDNY Apr. 24, 2023) ................................................................................................................................................. 15

*Vega v. Hempstead Union Free Sch. Dist.*, 801 F. 3d 72, 84 (2d Cir. 2015) ....................................... 7, 14

*Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) .............................................................................. 7

*Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 872 N.Y.S.2d 27, 40 (1st Dep't 2009) ..................... 15, 18

*Williams v. N.Y.C. Hous. Auth.*, 61 F.4th 55, 74 [2d Cir. 2023] .......................................................... 25

*Zakrzewska v. New Sch.*, 14 N.Y.3d 469, 479 (2010) ..................................................................... 27, 30

*Zakrzewska v. New School*, 598 F. Supp. 2d 426, 434-36 (S.D.N.Y 2009) ........................................... 30

## Statutes

New York State Human Rights Law § 296(1)(h) .................................................................................. 21

## Other Authorities

N.Y. Exec. Law § 300 ........................................................................................................................... 24

NYSHRL ............................................................................................................................................... 24

Title VII ................................................................................................................................................ 18

## PRELIMINARY STATEMENT

Plaintiff, Alexandra Noh ("Lexy" or "Ms. Noh"), respectfully submits this memorandum of law in opposition to both Defendants AdMarketplace, Inc. ("AdMarketplace") and Eugene Kilberg's ("Eugene" or "Defendant Kilberg") (collectively "Defendants") motions to dismiss[1] to the extent they seeks to dismiss Plaintiff's race-based discrimination and hostile work environment claims under 42 U.S.C. § 1981 ("Section 1981"), as well as Ms. Noh's race and sex/gender-based hostile work environment claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), the NYSHRL and New York City Human Rights Law ("NYCHRL").

Throughout Plaintiff's tenure, Defendants maintained an environment that fostered Defendant Kilberg's racially discriminatory and sexually harassing behavior. This behavior continued even through the height of the pandemic, in which Defendant Kilberg harassed Plaintiff through virtual meetings. After Plaintiff reported this behavior to Human Resources, Plaintiff repeatedly requested to continue her remote work to avoid returning to the physical space in which she suffered this abuse. Plaintiff identified severe psychological trauma triggered by the mere thought of that return. Contrary to Defendants' argument otherwise, as discussed further below, this accumulating harassment and discrimination from a direct supervisor coupled with an inadequate response by AdMarketplace's management, is enough to plead claims of discrimination, hostile work environment, and constructive discharge.

## STATEMENT OF FACTS

Plaintiff is a female of Asian descent. Compl. ¶ 69. On or about October 26, 2021, Plaintiff was hired by Defendants as a "UI/UX Product Designer" for Defendant ADMARKETPLACE,

---

[1]     Corporate Defendant and Individual Defendant submitted independent Motions to Dismiss. However, as Defendant Kilberg adopted and incorporated Corporate Defendant's Motion, and for the sake of brevity and judicial economy, Plaintiff will address both motions concurrently.

INC. Compl. ¶ 14. As a "UI/UX Product Designer," Plaintiff's responsibilities included but were not limited to communicating effectively with stakeholders, managers, developers, and end users to build products, then ensuring designs are properly translated into code, and presenting designs to management and stakeholders. Compl. ¶ 15. At all times relevant, Defendant EUGENE KILBERG ("Defendant EUGENE") was employed by Defendant ADMARKETPLACE as the Director of User Experience (UX). Compl. ¶ 11. That at all times relevant hereto, Defendant EUGENE had supervisory authority over Plaintiff. Defendant EUGENE had the authority to hire, fire, or affect the terms and conditions of Plaintiff's employment, or to otherwise influence the decisionmaker of the same. Compl. ¶ 12.

On approximately ten (10) separate occasions from late October through December of 2021, Defendant EUGENE insisted on seeing Plaintiff's computer screen while she worked. Compl. ¶ 19. On some of these occasions, Defendant EUGENE approached Plaintiff's chair from behind while Plaintiff was seated. *Id.* He placed his left hand on the chair's back, which kept the chair firmly in place. *Id.* On all of these occasions, Defendant EUGENE placed his right hand on top of Plaintiff's right hand to move her computer mouse. *Id.* On each occasion, Plaintiff would flinch and move her hand away, to which Defendant would respond "Oops, sorry." Compl. ¶ 20. Plaintiff asked each time that Defendant EUGENE please view the same files on his own computer. *Id.* Plaintiff would additionally send Defendant EUGENE said files so he could access them from his own computer. *Id.* Nevertheless, Defendant EUGENE would then stay in place and use Plaintiff's computer mouse while speaking less than one (1) foot from her ear. *Id.*

Defendant EUGENE would speak so closely to Plaintiff that Plaintiff was able to feel the heat from Defendant EUGENE's breath. Compl. ¶ 21. On at least two (2) occasions, Defendant EUGENE was speaking in a manner which caused his spit to fall into Plaintiff's food. *Id.* In

contrast, Plaintiff observed that Defendant EUGENE interacted with her male teammate and Senior UI/UX Designer David Noboa by instead seating himself at least two (2) feet away from David and letting David operate his own computer. Compl. ¶ 22.

On or about the beginning of December of 2021, Plaintiff stood at her desk to put on her jacket. Compl. ¶ 24. In order to do so, Plaintiff lifted up her arms above her shoulders. *Id.* Defendant EUGENE watched Plaintiff intently as she did so and then stated "Lexy, your figure is so different from the Asian girls I've dated." Plaintiff was too shocked to respond and immediately left the premises following this harassing comment. (Compl. ¶ 25. Plaintiff did not give any indication that these sexual advances or comments were welcomed. Compl. ¶ 26. Additionally, on more than one occasion, Plaintiff instructed, "EUGENE, you can't say that" and "Eugene, that's extremely disrespectful." *Id.* This conduct occurred within earshot of numerous other employees. To Plaintiff's knowledge, no one addressed this issue. Compl. ¶ 27.

Throughout the course of her employment, upon completion of various tasks for Defendant EUGENE, Defendant EUGENE would tell Plaintiff, "Lexy, you're such a *good* girl." Compl. ¶ 28. Plaintiff observed that Defendant would also make this statement to a female teammate, UX Designer Sarah Horowitz. Compl. ¶ 29. Plaintiff, to date, has never observed Defendant EUGENE make this statement to her male teammate David Noboa. *Id.* Whenever Plaintiff disagreed with Defendant EUGENE, Defendant EUGENE would ask Plaintiff if it was "her time of the month," blatantly referring to Plaintiff's menstrual cycle and inappropriately imputing its effects on Plaintiff's demeanor. Compl. ¶ 30. Plaintiff, to date, has never observed Defendant EUGENE make this statement to David Noboa. Compl. ¶ 31. When Plaintiff verbalized feeling too hot or cold in the office, Defendant EUGENE would state, "I know why! That's biology!" and said so

3

while laughing. Compl. ¶ 32.   Defendant's comments made Plaintiff feel sexualized, demeaned, and belittled. Compl. ¶ 33.

On at least three (3) separate occasions, Defendant EUGENE commented on Plaintiff's diet. Compl. ¶ 34.  For example, when Plaintiff ate at her desk, Defendant EUGENE stated, "You shouldn't eat so much, or you'll get too big." *Id.* On or about the end of November of 2021, Defendant EUGENE handed David Noboa a backpack with the AdMarketplace logo, and stated to Plaintiff, "I didn't get one for you Lexy, because you girls only like brand name things." Compl. ¶ 35.

On or about the end of December of 2021, employees of Defendant ADMARKETPLACE began working remotely due to the prevalence of the Omicron variant of COVID-19. Compl. ¶ 36. Despite the remote nature of her employment from this point on, Defendant EUGENE's sexual harassment and gender discrimination towards Plaintiff continued. *Id.* On or about March 21, 2022, Defendant EUGENE informed Plaintiff that he was eating snacks from Plaintiff's desk drawers and told Plaintiff, "I'm helping you get rid of carbs," and that eating the snacks was "a favor to [her]" to help maintain her weight and figure. Compl. ¶ 37. Defendant EUGENE also referred to Plaintiff as "darling" on various occasions. Compl. ¶ 38. During team meetings via virtual video chat that occurred from on or about January of 2022 to the end of March of 2022, Plaintiff left her camera off to avoid being watched by Defendant EUGENE. Compl. ¶ 39.   Although other teammates had their cameras off as well, Defendant EUGENE stated, "Lexy, why are you hiding? Come out, come out, wherever you are!" *Id.*

On or about January to February of 2022, Plaintiff observed that on 1-on-1 video calls with her, Defendant EUGENE placed himself in a different room than when on team calls. Compl. ¶ 41.  In the room where Defendant EUGENE conducted 1-on-1 calls, Plaintiff observed a photo of

a naked woman on the wall behind Defendant EUGENE. *Id.* On one such occasion on a 1-on-1 calls with Plaintiff, Defendant EUGENE pointed out the aforementioned photo without any provocation or inquiry. Compl. ¶ 42. He explained that the photo was one of his ex-girlfriends. *Id.* He then brought his laptop closer to the photo, forcing Plaintiff to look at it, while explaining how attractive his ex-girlfriend was and that she was a model. *Id.*

On multiple occasions, Defendant EUGENE berated Plaintiff in front of other colleagues. Compl. ¶ 43. On one such occasion on or about March 22nd or March 23rd of 2022, during a team video call, Defendant EUGENE was not paying attention while Plaintiff was explaining the answer to a question he asked. *Id.* Plaintiff responded, "We're going to talk about it in a few minutes." Compl. ¶ 44. To this, Defendant EUGENE became irate and screamed, "Lexy, it's a simple yes or no question – when I ask you a question – you answer it!" Compl. ¶ 45.

Plaintiff's male teammate David Noboa then reiterated "EUGENE, we're going to talk about it in a few minutes." Compl. ¶ 46. Defendant EUGENE immediately calmed down and stated, "THANK YOU, David." Compl. ¶ 47. Following this team call, Defendant EUGENE demanded Plaintiff have a 1-on-1 call with him. Compl. ¶ 49. This call lasted over ninety (90) minutes and consisted of Defendant EUGENE berating Plaintiff regarding her "disrespectful" behavior and undermining his authority. *Id.* Defendant EUGENE stated, amongst other things, that Plaintiff was not to talk back to him, needed to change the way she spoke to him because he is her superior, and that if he asks questions, to never refer to any documents or files but to instead simplify the answer and tell him exactly what he wants to hear. *Id.*

To Plaintiff's information and knowledge, Defendant EUGENE did not approach David Noboa for a 1-on-1 following this video call. Compl. ¶ 50. Plaintiff was incredibly shaken and disturbed by this treatment by Defendant EUGENE, especially since it threatened her job security.

Compl. ¶ 51. Defendant EUGENE's harassment interfered with her duties and affected her mental health. Compl. ¶ 52. Plaintiff actively tried to avoid having her video camera on during video calls and started shaking at the thought of returning to the office. *Id.* On yet another occasion in late 2021, Plaintiff, Defendant EUGENE, and David Noboa were discussing an upcoming company trip to Miami. Compl. ¶ 53. Plaintiff, knowing Defendant EUGENE would stay in a much nicer hotel room than herself and David, joked "We should trade rooms!" Compl. ¶ 54.  After this conversation, Defendant EUGENE cornered Plaintiff and stated in sum and substance, "You shouldn't joke around about sharing rooms with me." Compl. ¶ 55.

Plaintiff was appalled by the suggestion and replied that her intent was absolutely not to suggest the two of them share a room. Compl. ¶ 56. In response, EUGENE smirked and stated that he must have misheard. *Id.* On or about March 29, 2022, Plaintiff reported this sexual harassment, gender and race discrimination to Claire Luckner, the Director of Human Resources. Compl. ¶ 57. On or about March 30, 2022, Plaintiff also reported this sexual harassment, gender and race discrimination to George Pappachen, Head of Business and Legal Affairs. Compl. ¶ 58. On or about March 30, 2022, George Pappachen stated in sum and substance, "We should have known. We should have done something about it." Compl. ¶ 59.

On or about April 4, 2022, Plaintiff also discussed the allegations with Steven Read, Senior Vice President of Product Management and Defendant EUGENE's Supervisor. Compl. ¶ 60. During this conversation, Steven Read stated in sum and substance, "I've reflected on what I could have and should have done differently…" Compl. ¶ 61.

Plaintiff requested not to be forced to come back into the office, where she communicated that she felt unsafe and would be triggered by the physical space that led to her psychological trauma. Compl. ¶ 62. Plaintiff was denied this accommodation, even though she had previously

been granted the ability to work from home indefinitely. *Id.* Plaintiff despite performing her job at a satisfactory, and higher-level, from home, after reporting Defendant EUGENE's behavior, Defendant ADMARKETPLACE insisted Plaintiff return to work physically in the office. Compl. ¶ 63.

On or about the end of April of 2022, overwhelmed with fear and distress from the sexually harassing environment, tendered her resignation due to the neglect and insufficient response to her reports of discrimination and sexual harassment. Compl. ¶ 64.

## STANDARD OF REVIEW

When reviewing a Motion to Dismiss, the Court must "accept all factual allegations in the complaint as true and all reasonable inferences drawn in favor of the plaintiff." *Napoli-Bosse v. GM LLC,* 2023 U.S. App. LEXIS 30073, at *2 (2d Cir. Nov. 13, 2023). "[T]he issue is not whether a plaintiff will ultimately prevail but whether the [plaintiff] is entitled to offer evidence to support the claims." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). In assessing, the court should not "assay the weight of the evidence which might be offered in support" of a claim. *Schafer v. Direct Energy Servs., LLC*, 845 F. App'x 81, 82 (2d Cir. 2021). To survive a motion to dismiss, a plaintiff "is not required to plead a prima facie case." *Vega v. Hempstead Union Free Sch. Dist*., 801 F. 3d 72, 84 (2d Cir. 2015).

## ARGUMENT

**I.   CONSTRUCTIVE DISCHARGE**

**A.   Plaintiff Has Alleged Defendants Deliberately Created an Intolerable Work Environment That Would Force a Reasonable Person to Resign**

Defendants contend that Corporate Defendant did not deliberately make Plaintiff's work environment intolerable.[2] "An employee is constructively discharged when his employer, rather than discharging him directly, intentionally creates a work atmosphere so intolerable that he is forced to quit involuntarily." *Id*., *citing, Terry v. Ashcroft*, 336 F.3d 128, 151-52 (2d Cir. 2003), *citing Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 161 (2d Cir. 1998). "Working conditions are intolerable when, viewed as a whole, they are 'so difficult or unpleasant that a reasonable person *in the employee's shoes* would have felt compelled to resign'." *Id*., *citing, Terry*, 336 F.3d at 152. "**An employee need not show that an employer acted with the specific intent to cause the employee to resign; rather, she need only show that the employer's actions were 'deliberate and not merely negligent or ineffective**.'" *Bader v. Special Metals Corp.*, 985 F. Supp. 2d 291, 310 (N.D.N.Y. 2013). "To bring a constructive discharge claim, an employee must explore other options before quitting." *Forman v. New York City Dep't of Educ.*, No. 19-CV-8156, 2022 U.S. Dist. LEXIS 57739, 2022 WL 912130, at *11 (S.D.N.Y. Mar. 29, 2022).

Plaintiff explicitly pleads that she informed both George Pappachen, Head of Business Legal Affairs, and Steven Read, Senior Vice President of Product Management, of the *intolerable* environment should she be forced to return to the office and that they *subsequently* and *deliberately* mandated this return. Compl., ¶¶ 62, 63. Plaintiff pleads this decision was made despite previously being granted indefinite remote work (a tolerable work environment, knowingly creating a work environment that they knew would be objectively intolerable for a reasonable person in her position. *Id.* The complaint outlines that Ms. Noh actively sought the continuation of an alternative solution to returning to the physical office space, expressing her desire to remain employed and

---

[2] "[E]vidence of the employer's intent to create an intolerable environment that forces the employee to resign," is also an element of a constructive discharge claim. *Shultz v. Congregation Shearith Israel*, 867 F.3d 298, 308 (2d Cir. 2017) (internal quotations omitted); *but see Green*, 578 U.S. at 575 (Altio, J., concurring) ("It is abundantly clear that the majority has abandoned the discriminatory-intent requirement[.]").

fulfill her job responsibilities, as she had been from home. *Id.* Thus, given this background, when confronted with being forced to reinhabit the physical space in which she suffered trauma on any many occasions, coupled with the enumerated existing effects on her mental health, any reasonable person in her shoes would have felt compelled to resign. *Atkinson v. Prabhjat Singh*, No. 19-cv-3779, 2022 U.S. Dist. LEXIS 8203, at *40 (S.D.N.Y. Jan. 14, 2022) (finding that plaintiff who alleged she was subjected to gendered epithets and skipped over a half a dozen times in meetings adequately pled a constructive discharge).

Defendant cannot establish from the pleadings alone that, as a matter of law, Plaintiff's constructive discharge claim fails; instead, a jury should be permitted to consider whether, under the totality of the circumstances, Plaintiff was compelled to resign. Defendant's arguments would be more appropriate for a motion for summary judgment after discovery has been completed.

Defendants also argue that Plaintiff does not meet the heavy burden of establishing constructive discharge and cite a number of cases whose claims were dismissed at the summary judgment stage, which is improper at this juncture. As stated *supra*, Plaintiff is not required to establish the elements of a *prima facie* case at the pleading stage, but instead must only plead enough facts to state a claim for relief that is plausible on its face. Plaintiff has successfully done so. As, for the reasons stated below, Plaintiffs certainly, at minimum, pleads claims of hostile work environment under both federal and revised state and city law, Defendants' argument fails and their motion to dismiss Plaintiff's constructive discharge claims should be denied.

## II.  PLAINTIFF SUFFICIENTLY PLEADS CLAIMS OF RACE DISCRIMINATION AND GENDER BASED SEXUAL HARASSMENT UNDER SECTION 1981, TITLE VII, NYSHRL, AND NYCHRL

### A.  Plaintiff's Complaint contains sufficient facts to plead a claim of race discrimination under Section 1981

To state a discrimination claim under Section 1981, a plaintiff must allege that (1) she is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute. *Felder v. United States Tennis Ass'n*, 27 F.4th 834, 848 (2d Cir. 2022).[3]

In the Complaint, Plaintiff has alleged: (1) she is a member of a racial minority (Asian); (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute, per *Felder, Supra*. Satisfying the third element, Plaintiff has pled an adverse action by Defendants, including but not limited to: an abusive hostile work environment, humiliating discipline for not behaving in a more subservient manner than her non-Asian and/or non-female colleagues (Compl., ¶¶ 28-31, 49-50), denying her previous allowance to work remotely (Compl., ¶¶ 62, 63); and, constructive termination. Satisfying the second element, Plaintiff has alleged that none of her similarly situated non-Asian and/or non-female colleagues were subjected to the same adverse actions; and, she also identified specific comparators (by name and position) who were never subjected to each particular adverse action. *Chen v. City Univ. of N.Y.*, 2011 U.S. Dist. LEXIS 130094, at *2 (S.D.N.Y. Nov. 9, 2011) (denying Motion to Dismiss where Plaintiff pled that she was "maligned for not fitting defendants' stereotypical model of how Asian women are expected to act" and that her supervisor utilized "linguistic racial discrimination" against her by treating her like a child and mocking her); *See Mitura v. Finco Servs., Inc.*, 2024 U.S. Dist. LEXIS 11000, at *3 (S.D.N.Y. Jan. 22, 2024) (denying a Motion to Dismiss on a Section 1981 claim where defendant repeatedly called plaintiff

---

[3] Direct evidence of discriminatory intent is not required to satisfy the second element of a section 1981 claim, as a plaintiff may instead rely on circumstantial evidence that supports an inference of discrimination. *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 104 (2d Cir. 2001). At the pleading stage, courts do not apply the *McDonnell Douglas* burden shifting test to analyze the evidentiary support for discrimination claims arising under federal law, instead the Court asks only whether a plaintiff has pled a prima facie case, not whether a plaintiff has established that case. *Figueroa v. RSquared NY, Inc.*, 89 F.Supp.3d 484, 489 (E.D.N.Y. 2015).

"an old Asian with no kids," a "single woman" and perpetuated "the stereotype of the 'compliant and servile Asian woman.'"). Accordingly, because Plaintiff has pled that she was subjected to an abusive working environment because of her race, Plaintiff has satisfied her pleading standard under §1981 for purposes of Rule 12(b)(6). In the event the Court converts the motion to one under Rule 56 after discovery is completed, Plaintiff respectfully asserts that there are too many unresolved questions of material facts so as to prohibit dismissal by way of summary judgment.

**B.    Plaintiff Has Successfully Pled a Claim for Gender Based Sexual Harassment, And Race/Color Discrimination Under Title VII, NYSHRL, and NYCHRL**

**a.    Title VII**

For a discrimination claim to survive a motion to dismiss under <u>Title VII</u>, "what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015); *see also DeVore v. Neighborhood Hous. Servs. of Jamaica Inc.,* No. 15 Civ. 6218 (PKC), 2017 WL 1034787, at *4 (EDNY Mar. 16, 2017) ("At the pleading stage, a plaintiff does not need to prove discrimination, or even allege facts establishing every element of the *McDonnell Douglas prima facie* case, but the facts alleged must give plausible support to the reduced requirements of the *prima facie* case."). At the pleading stage, a plaintiff must allege that the employer took adverse action against her only *in part* for a discriminatory reason, and she may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination. *Small v New York City Dept. of Educ.*, 650 F.Supp.3d 89, 98 (SDNY 2023), *citing Stratton v. Dep't for the Aging for City of N.Y.*, 132 F.3d 869, 878 (2d Cir. 1997). A plaintiff may satisfy this burden by pleading facts that create an "inference of discrimination" based on "the sequence of events leading to the

11

plaintiff's discharge." *Id., quoting Littlejohn*, 795 F.3d at 312. "[T]he question of whether considerations of the plaintiff's sex caused the conduct at issue often requires an assessment of the individuals' motivations and state of mind and an invidious discriminatory purpose may often be inferred from the totality of the relevant facts." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 548 (2d Cir. 2010) (internal quotations omitted).   The ultimate question always remains *was the conduct perpetrated because of the plaintiff's protected category*.  *Redd v. N.Y. State Div. of Parole*, 678 F.3d 166, 178 (2d Cir. 2012)(emphasis added). Moreover "the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination. They need only give plausible support to a minimal inference of discriminatory motivation." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). Such a minimal inference may arise from "the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group." *Littlejohn*, 795 F.3d at 312. An employer's background of invidious, discriminatory actions and comments against a plaintiff may bolster such allegations. *See Vega*, 801 F.3d at 89) ("These actions are plausibly connected to Vega's Hispanic background and therefore provide a contextual basis for inferring discrimination. ").

Plaintiff has alleged both that she is female and has alleged that she suffered adverse employment actions, including but not limited to sexual harassment; denying her previous allowance to work remotely; and, constructive discharge. *See generally,* Compl., ¶¶ 28-31, 49-50, 62-63. Finally, she has alleged at least minimal support for the proposition that Defendants were motivated by discriminatory intent, including that she alleges a pattern of disparagement by her direct supervisor, and that Defendant AdMarketplace repeatedly refused to consider Plaintiff's inquiries to continue working from home directly following her complaints of sexual harassment

and discrimination. Complaint, ¶¶ 62,63. Here, the Complaint sufficiently alleges that members of the opposite sex were not exposed to such disadvantageous terms of conditions of employment. Specifically, the Complaint alleges that Defendant Kilberg did not treat similarly situated male employees to the same or similar conduct. Compl., ¶¶ 28-31, 49-50, 62-63. Moreover, Plaintiff pleads that her complaints of sexual harassment and assault weren't taken seriously because she is an Asian female in the workplace. *Id*. ¶69.

Thus, the Complaint is sufficiently plead to allow the Court to draw an inference that the Plaintiff suffered this unlawful contact by Defendant Kilberg because Plaintiff is an Asian female. The pleading makes clear that Plaintiff suffered disparate treatment as compared to non-Asian male employees who were not subjected nor complained of discriminatory treatment. Additionally, the Court can also infer that Defendant AdMarketplace's inaction to Plaintiff's complaint to alleviate the effects of sexual harassment also occurred because Plaintiff is a female.

**b. Plaintiff's <u>NYCHRL</u> discrimination claims are properly pled.**

The Complaint alleges that both Defendants violated NYCHRL by discriminating against her on the basis of her gender/sex (female) and race (Asian). § 8-107 provides in pertinent part that, "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the <u>actual</u> or <u>perceived</u> … **gender** [or] **race**, … of any person … (3) To discriminate against such person in compensation or in terms, conditions or privileges of employment." In order to survive a motion to dismiss under the <u>NYCHRL</u>, a plaintiff must plausibly allege that she "has been treated less well at least in part because of her [protected characteristic]." *Thacker v HSBC Bank USA, N.A.*, 1:22-CV-7120-GHW, 2023 WL 3061336, at *5 (SDNY Apr. 24, 2023), *quoting Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013). The <u>NYCHRL</u> does <u>not</u> require materially adverse employment actions for a discrimination claim in the first place. *See Mihalik*, 715 F.3d at 114. The severity and

13

pervasiveness of conduct is relevant only to the issue of damages, and the challenged conduct need not even be "tangible (like hiring or firing)." *Id.*, at 110 (*quoting Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 872 N.Y.S.2d 27, 40 (1st Dep't 2009)). It is sufficient to "show differential treatment of any degree based on a discriminatory motive." *Gorokhovsky v. N.Y.C. Hous. Auth.*, 552 F.App'x 100, 102 (2d Cir. 2014).

Under the NYCHRL, a plaintiff need only allege that she was subject to "unwanted gender-based conduct." *McHenry v. Fox News Network, LLC*, 510 F.Supp.3d 51, 66 (S.D.N.Y., 2020) (internal citations omitted). Thus, "[e]ven a single comment that objectifies women . . . may be actionable." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.,* 715 F.3d 102, 111 (2d Cir. 2013) (citations, quotations and alterations omitted).

As a threshold matter, Defendants' arguments that that Defendant Kilberg's comments are not discriminatory, they did not engage in any adverse employment actions, and that there was no constructive discharge all run to the merits of the allegations, not their sufficiency under Rule 12(b)(6) analysis. In that regard, their motion does nothing more than verify the existence of genuine issues of material facts. Plaintiff has met her burden by plausibly pleading that she was discriminated against on the basis of her gender (female) and race (Asian). Therefore, Plaintiff has also sufficiently alleged that she was treated less well at least in part because of her status as an Asian female, in satisfaction of her pleadings requirements under the <u>NYCHRL</u>. Accordingly, Plaintiff has satisfied her burden at this stage.

> **c.   Plaintiff's <u>NYSHRL</u> discrimination claim is properly pled.**

The Complaint alleges that both Defendants also violated NYSHRL by discriminating against her on the basis of her gender/sex (female) and her race (Asian). To state a cause of action for discrimination under the NYSHRL, "a plaintiff must plead facts that would tend to show (1) that he or she was a member of a protected class, (2) that he or she ... suffered an adverse

employment action, (3) that he or she was qualified to hold the position for which he or she ... suffered [the] adverse employment action, and (4) that the ... adverse employment action occurred under circumstances giving rise to an inference of ... discrimination." *Cagino v. Levine*, 157 N.Y.S.3d 561, 564 (2021). Claims under the <u>NYSHRL</u> are analyzed identically to claims under <u>Title VII</u>. *Antoine v Brooklyn Maids 26, Inc.*, 489 F.Supp.3d 68, 83 (EDNY 2020), *citing Smith v. Xerox Corp.*, 196 F.3d 358, 372 n.1 (2d Cir. 1999), *and Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 609 (2d Cir. 2006).

As Plaintiff has sufficiently met her burden at this stage of the pleadings with respect to discrimination in violation of Title VII, as set forth above, accordingly she has also met her burden with respect to the NYSHRL.

## III.    HOSTILE WORK ENVIRONMENT

Defendants wish to raise an affirmative defense to both Plaintiff's race and gender-based hostile work environment allegations that the many pled instances of comments and conduct were merely "trivial inconveniences," which is an argument for a different day. *See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d at 111. ("The employer may prevail on summary judgment if it shows that a reasonable jury could conclude only that the conduct amounted to no more than a petty slight.") (*Citing Williams*, 872 N.Y.S.2d at 41.); *Sanderson*, 2020 WL 7342742 at *8 ("Defendants fail to recognize that the 'petty slights and trivial inconveniences' argument is an affirmative defense … Defendants may raise this defense on summary judgment or at trial, but it fails on a motion to dismiss."). Indeed, each and every case mentioned, save one, in the three pages of citations referenced in Corporate Defendant's motion to support dismissing Plaintiff's hostile work environment claims, were arguments made and decided at **summary judgement**, and thus not applicable at this early stage. *See* Dkt. No. 26 at pgs. 17-19. Notably, the single cited case that was decided during the motion to dismiss stage was in fact analyzing *Title VI* claims rather

15

than Title VII claims. *D.C. v. Copiague Union Free Sch. Dist.*, No. 16-cv-4546 (SJF)(AYS), 2017 U.S. Dist. LEXIS 113253, at \*31 (E.D.N.Y. July 11, 2017). Defendants thus have little footing to support the dismissal of Plaintiff's well-pled hostile work environment claims under Section 1981, Title VII, NYSHRL, and NYCHRL. As Defendants' arguments are baseless, the Court must reject Defendants' Motion and allow these claims to proceed to litigation.

### A. Plaintiff's Complaint contains sufficient facts to plead a claim of hostile work environment under Section 1981

A hostile work environment claim under Section 1981 does not require an adverse action, as the hostile work environment itself alters the terms and conditions of Plaintiff's employment. *See Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001). Instead, "[t]o state a claim for a hostile work environment in violation of [federal law], a plaintiff must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive – that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of plaintiff's [protected characteristic]." *Patane*, 508 F.3d at 113 (internal quotations omitted). Moreover, on a motion to dismiss, Plaintiff's only requirement is to "provide in the complaint a short plain statement of the claim that shows that [Plaintiff is] entitled to relief and that gives [Defendants] fair notice of [Plaintiff's] claim for hostile work environment and the grounds upon which the claim rests." *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 241 (2d Cir. 2007).

"[W]hether conduct is not severe or pervasive enough to state a claim for hostile work environment . . . is a factual question that is generally inappropriate for the court to determine on a motion to dismiss." *Robert v. King*, No. 19-cv-2781, 2020 U.S. Dist. LEXIS 177648, at \*25 (S.D.N.Y. Sept. 24, 2020) (internal quotations omitted). Rather, "to avoid dismissal . . . a plaintiff

need only plead facts sufficient to support the conclusion that she was faced with harassment of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse[.]" *Patane*, 508 F.3d at 113 (internal quotations omitted). Indeed, the Second Circuit has "repeatedly cautioned against setting the bar too high in this context." *Id* (internal quotations omitted).

Plaintiff pleads numerous incidents of racially charged statements and treatment, including those that are not blatantly racial but do in fact reinforce and allude to stereotypes of subservient Asian women. ¶¶ 24-26, 43-50. Pleading racially charged statements, and a pattern of targeted abuse is enough to survive a motion to dismiss. *See, e.g.*, *Lewis v. Roosevelt Island Operating Corp.*, 246 F. Supp. 3d 979, 990 (S.D.N.Y. 2017) (denying motion to dismiss on the basis of numerous racially charged statements and a pattern of yelling, screaming, cursing, and giving the silent treatment to the plaintiff). Unique to Asian women, this court has ruled that although merely referencing an individual's race may, on its face be race neutral, at the motion to dismiss stage, when evaluating within the context of the environment alleged, "the comments [can be] susceptible of being understood as harassment motivated by racial animus," and of the type that a reasonable person would find objectively hostile. *Mitura v. Finco Servs., Inc.,* No. 23-CV-2879 (VEC), 2024 U.S. Dist. LEXIS 11000, at *22-23 (S.D.N.Y. Jan. 22, 2024) (denying motion to dismiss as to 1981 hostile work environment claims where Plaintiff was stereotyped as a servile Asian woman); *see Love v. Premier Util. Servs., LLC*, 186 F. Supp. 3d 248, 254 (E.D.N.Y. 2016) (citations omitted); s*ee also Jean-Louis v. Am. Airlines*, No. 08-cv-3898, 2010 U.S. Dist. LEXIS 77292, at *20 (E.D.N.Y. July 30, 2010) (supervisor's single use of "get used to it, it's a white world" in response to plaintiff's complaint sufficient to establish hostile work environment at a pleading stage).

**B.    Plaintiff's Complaint contains sufficient facts to plead a claim of hostile work environment under Title VII**

Under Title VII, a hostile work environment "exists '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 310 (2004) (quoting *Harris v. Forklift Sys., Inc*., 510 U.S. 17, 21 (1993)).  The Supreme Court's standard is disjunctive, requiring the harassment to be either "severe *or* pervasive (not severe and pervasive)."  *Pa. State Police v. Suders*, 542 U.S. 129, 133 (2004) (emphasis added); *Morgan*, 536 U.S. at 116. For conduct to be found severe or pervasive, there no "threshold magic number of harassing incidents," *Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d Cir. 2000), and an environment need not be found to be "unendurable," "intolerable." *Terry*, 336 F.3d at 148.   To determine whether an incident or series of incidents are severe or pervasive, "courts must assess the totality of the circumstances, considering elements such as 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014).

In discussing a hostile work environment claim, Courts have held that "an employer may be liable for creating a hostile work environment, even in the absence of 'tangible employment actions." *Burlington Indus., Inc., v. Ellerth*, 524 U.S. 742 at 691-92 (1998); *Drees v. County of Suffolk*, 2007 U.S. Dist. LEXIS 46618, at 36 (E.D.N.Y. June 27, 2007).

To defeat a motion to dismiss hostile work environment claims "a plaintiff need only plead facts sufficient to support the conclusion that she was faced with 'harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.'" *Patane v. Clark*, 508 U.S. 106, 113 (2d Cir. 2007) (quoting *Terry v. Ashcroft*, 336 F.3d 127, 148 (2d Cir. 2003).   The Second Circuit has "repeatedly cautioned against setting the

bar too high in this context." *Id.*; *see Dawson v. New York City Transit Authority*, 624 Fed. Appx. 763 (2d Cir. Sept. 16, 2015) ("At the pleading stage, district courts would do well to remember this exceedingly low burden that discrimination plaintiffs face even after they have survived a motion to dismiss."). "[A] plaintiff need not provide a list of every alleged discriminatory remark and incident of harassment to state a claim for hostile work environment." *Hagan v. City of New York*, 39 F. Supp. 3d 481, 500 (S.D.N.Y. 2014). Instead, a plaintiff plausibly alleges a hostile work environment where she "identifies a number of specific events and generally alleges constant harassment." *Id.* (citing cases). "In particular, the court examines 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Hall v. N.Y.C. DOT*, 701 F. Supp. 2d 318, 329 (E.D.N.Y. 2010).

Defendants particularly challenge the severity element of Ms. Noh's gender and race-based hostile work environment claims, incorrectly identifying them as trivial inconveniences. As set forth in the Complaint, Plaintiff has pled *multiple* detailed allegations of sexual harassment that are both objectively and subjectively offensive. These allegations include inappropriate physical touching, lewd comments, and humiliating targeted abuse spanning from October of 2021 until Plaintiff's constructive discharge in April of 2022. *See* Compl. at ¶¶ 16-35, 37-56. Courts have even held that **one** incident of touching can be deemed a hostile work environment. *Batten v. Global Contract Servs.,* 2018 U.S. Dist. LEXIS 105327, at 14 (E.D.N.Y. 2018). Despite Defendant's short-cited recitation of the facts as plead, Plaintiff did plead many incidents of repeated sexually discriminatory events, enumerating at least **twenty (20)** incidents in the pleading alone.

These incidents included Defendant Eugene Kilberg routinely forcing his body on top of hers while doing work in the office, commenting on her body, making verbal sexually charged statements, commenting on her menstrual cycle, body, and weight, and baselessly accusing her of disrespecting him. Compl., ¶¶ 19-22, 24-27, 30-34, 37-47. Thus, Plaintiff has certainly met her burden of establishing a claim for hostile work environment under Title VII and has satisfied her pleading requirement. Any argument as to the severity or pervasiveness of the conduct all run to the merits of the allegations, not their sufficiency under Rule 12(b)(6) analysis. In that regard, their motion does nothing more than verify the existence of genuine issues of material facts.

Here, to allege liability against Defendants, the Complaint sufficiently alleged that they actively contributed to the racially and sexually hostile work environment against Plaintiff. As per the allegations in the complaint, Defendant Kilberg, Plaintiff's main antagonist, is a white male. Plaintiff asserted that she was being subjected to disparate treatment due to her race/color and gender when she noticed that her coworkers were being treated differently than Plaintiff including receiving more favorable treatment (Complaint ¶4).

Plaintiff went to management at AdMarketplace seeking help and made a complaint of discrimination against Defendant Kilberg. Id. ¶¶6 , 9, 10-14, 44-49). Defendants acknowledged that they should have been aware of the conduct before Plaintiff complained of a racially disparate and hostile work environment. The Complaint asserts that Defendants' intentionally placed Plaintiff back into the space where she suffered the hostile work environment and as a direct result, Plaintiff was subjected to adverse employment actions and a further hostile work environment Id. ¶¶48, 49, 54-58, 61, 62-66.

In the above regard, Defendants actively contributed to the underlying discrimination, disparate treatment and hostile work environment against Plaintiff. If the Court examines "the

totality of the circumstances" and "evaluates allegedly discriminatory incidents 'cumulatively,' rather than by asking whether any 'incident of harassment 'standing alone' is sufficient to sustain the hostile work environment claim," (*Williams v. N.Y.C. Hous. Auth.*, 61 F.4th 55, 74 [2d Cir. 2023]), the Court, and/or a reasonable jury, could conclude that Defendants actively participated in, and contributed to, the discriminatory hostile work environment against Plaintiff. The Court/Jury "could credit Plaintiff's subjective perception that [Collective Defendants'] conduct created a hostile or abusive environment by constantly making Plaintiff 'feel incompetent and small . . . insecure and anxious' and 'making it difficult for her to do her job." *Ilana Gamza-Machado de Souza v. Planned Parenthood Fed'n of Am., Inc.*, 2023 U.S. Dist. LEXIS 54305, *19-20 (SDNY 2023). Further, "a jury could infer that, even though the [Movant Defendants' conduct] was not facially discriminatory, it was part of a [known] course of discriminatory conduct" against Plaintiff (Id.).

Finally, Defendant Killberg's arguments that Plaintiff was not qualified, and that there was no adverse employment action taken, run to the *merits of the allegations*, not their sufficiency under Rule 12(b)(6) analysis. In that regard, their motion again does nothing more than verify the existence of genuine issues of material facts. Plaintiff pled that she was hired by Defendants, performed her job both from home and that her performance was exemplary during the course of her employment. Compl., ¶¶ 14, 63, 73. Defendants' argument that Plaintiff's allegations do not raise an inference of discrimination, as a legal issue, are clearly refuted by the as such, Plaintiff has certainly met her burden of pleading claims for hostile work environment under Title VII.

### C.    NYSHRL and NYCHRL

In 2019, the NYSHRL explicitly adopted the NYCHRL standard for hostile work environment.  The 2019 amendments added NYSHRL § 296(1)(h), which states, "harassment is an

unlawful discriminatory practice when it subjects an individual to inferior terms, conditions or privileges of employment because of the individual's membership in one or more protected categories." Accordingly, Plaintiffs' NYSHRL and NYCHRL hostile work environment claims are analyzed identically.[4]

Thus, Plaintiffs are only required to allege that they were treated less well than other employees because of their protected category. *See Carter v. Verizon*, No. 13-cv-7579, 2015 U.S. Dist. LEXIS 6370, at *25-*26 (S.D.N.Y. Jan. 20, 2015); *Sletten v. LiquidHub, Inc.*, No. 13-cv-1146, 2014 U.S. Dist. LEXIS 94697, at *23-*24 (S.D.N.Y. July 10, 2014). It is then Defendants' burden, as affirmative defense, to "prove that the conduct complained of consists of nothing more than what a reasonable victim of discrimination would consider 'petty slights or trivial inconveniences.'" *Mihalik*, 715 F.3d at 111 (cleaned up). Indeed, even on summary a judgment, dismissal is only appropriate if the action is "truly insubstantial" and "the defense is clear as a matter of law." *Id.*

As, for the reasons discussed above, Plaintiffs' claims assuredly suffice on the lesser state standard. *See Spencer*, 2023 U.S. Dist. LEXIS 184012, at *32; *cf. Williams*, 61 A.D.3d at 80 n. 30 (noting that "one can easily imagine a single comment" being actionable under the city law standard). In this case, as analyzed above, Plaintiff has sufficiently pled that she was treated less well due to her gender and race and more than plausible that Defendants' actions certainly rise above the level of a petty slight or trivial inconvenience, making Defendants liable for creating a hostile work environment for Plaintiff. Further, because the conduct was perpetrated by Plaintiff's supervisor, Defendant AdMarketplace is strictly liable in the present case. *Zakrzewska v. New Sch.*, 14 N.Y.3d 469, 479 (2010). Therefore, Defendant's Motions must be denied insofar as it seeks to

---

[4] Notably, Defendants do not even attempt to challenge Plaintiffs' race based NYCHRL hostile work environment claims.

dismiss Plaintiff's hostile work environment claims.

IV. **DEFENDANT ADMARKETPLACE IS VICARIOUSLY LIABLE AS THE COMPLAINT SUFFICIENTLY ALLEGES THAT DEFENDANT KILBERG HAD SUPERVISORY AUTHORITY OVER PLAINTIFF**

A. **Defendant AdMarketplace is Vicariously Liable**

Despite the motion to dismiss the complaint in its entirety, Defendants fail to address that AdMarketplace is vicariously liable for Defendant Kilberg's conduct. "Issues not sufficiently argued in the briefs are considered waived." [*21] *City of Syracuse v. Onondaga County*, 464 F.3d 297, 308 (2d Cir. 2006) (internal quotation marks omitted).

"When a high-level supervisor, acting within the scope of his actual or apparent authority, furthers the creation of a hostile work environment through sexual harassment, or 'if he was otherwise aided in accomplishing the harassment by the existence of the agency relationship,' liability is automatically imputed to the employer." *Dortz v. City of N.Y.,* 904 F. Supp. 127, 152-53 (S.D.N.Y. 1995) (*citing Karibian v. Columbia Univ.*, 14 F.3d 773, 779 (2d Cir. 1994)). Moreover, when a supervisor's behavior culminates in a tangible (adverse) employment action against the employee, there are no affirmative defenses available to the employer, and the employer will be vicariously and strictly liable. *Langford v. International Union of Operating Engineers*, Local 30, 765 F.Supp.2d 486 (S.D.N.Y. 2011); *See also*, Stofsky v. Pawling Cent. School Dist., 635 F.Supp.2d 272, 295 (S.D.N.Y. 2009) ("[n]o affirmative defense is available … when the supervisor's harassment culminates in a tangible employment action"); *Crawford v. Metropolitan Government of Nashville and Davidson County, Tenn.*, 555 U.S. 271, 278 (2009) ("there is no affirmative defense if the hostile environment culminates in a tangible employment action against the employee").

At this early stage, Plaintiff has sufficiently alleged that Defendant Kilberg, was "Plaintiff's supervisor and/or had supervisory authority over Plaintiff" and that Defendant

KILBERG "had the authority to hire, fire, affect the terms and conditions of Plaintiff's employment, or influence the decisionmaker of same." Defendant KILBERG clearly "has the ability to do more than carry out personnel decisions, including the power to hire and fire employee conditions of employment." *Scalera v. Electrograph Sys., Inc.*, 848 F. Supp. 2d 352, 373 (E.D.N.Y. March 26, 2012). In order to establish liability, Plaintiff does not need to prove that Defendant Kilberg "*actually used* such powers [against]" Plaintiff. *Id.* (emphasis added). Moreover, Plaintiff has sufficiently alleged that as a result of reporting Defendant Kilberg's sexual harassment, she was constructively discharged. *See* Compl. at ¶¶ 3, 44-45. Therefore, Defendants' Motions must be denied insofar as they seek to dismiss Plaintiff's vicarious liability claims.

### B. Defendant AdMarketplace is Vicariously Liable under the NYSHRL and NYCHRL

Effective August 12, 2019, courts are required to construe the NYSHRL more "liberally." N.Y. Exec. Law § 300. Therefore, for the same reasons the Court should find Plaintiff has sufficiently pled that Defendant AdMarketplace is vicariously liable under Title VII, the Court should find Defendant liable under the NYSHRL.

Under the NYCHRL, employers are strictly liable for the unlawful harassment by a supervisor or manager, regardless of *whether or not* it culminated in a tangible employment action. As the New York Court of Appeals held, "[t]he plain language of § 8-107 . . . creates vicarious liability for the acts of managerial and supervisory employees even where the employer has exercised reasonable care to prevent and correct any discriminatory actions and even where the aggrieved employee unreasonably has failed to take advantage of employer - offered corrective opportunities." *Zakrzewska v. New School*, 14 N.Y.3d 469, 478, 928 N.E.2d 1035, 1038, 902 N.Y.S.2d 838, 841 (2010) (quoting *Zakrzewska v. New School*, 598 F. Supp. 2d 426, 434-36 (S.D.N.Y 2009)); see also NYCHRL §8-107(13)(b)(1) ("[a]n employer shall be liable for an

unlawful discriminatory practice based upon the conduct of an employee . . . where the employee or agent exercised managerial or supervisory responsibility").

Here, Plaintiff has clearly alleged that Defendant KILBERG exercised managerial or supervisory responsibility. *See* Compl. at ¶ 14.  Thus, Plaintiff has adequately pled that Defendant AdMarketplace is vicariously liable for Defendant Kilberg's conduct under Title VII, NYSHRL, and NYCHRL.

## **CONCLUSION**

In construing the Complaint in a light most favorable to the Plaintiff, as this Court must do, Plaintiff has sufficiently pled enough facts to establish facially plausible causes of action for the above-mentioned claims. For the foregoing reasons, it is respectfully requested that Defendants' Motions to Dismiss Plaintiff's Complaint be denied in its entirety, together with any other relief the Court deems just and proper.

Should the Court find otherwise, Plaintiff respectfully requests leave to replead any and all dismissed claims, as "a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245; *see also Wallace v. Federated Dep't Stores, Inc.*, 214 Fed. Appx. 142, 144 (3d. Cir. 2007)("[d]ismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility.").

Dated: New York, New York
        August 20, 2024

                                    **PHILLIPS & ASSOCIATES,**
                                    **ATTORNEYS AT LAW, PLLC**

                        By:      _____/s/_____
                                 Melissa Vo, Esq.
                                 *Attorneys for Plaintiff*
                                 45 Broadway, Suite 430
                                 New York, New York 10006
                                 (212) 248-7431
                                 mvo@tgplaws.com