**PHILLIPS & ASSOCIATES**

*Attorneys at Law*
45 BROADWAY, SUITE 430, NEW YORK, NEW YORK 10006
TEL: (212) 248-7431 FAX: (212) 901-2107
WWW.NYCEMPLOYMENTATTORNEY.COM
A PROFESSIONAL LIMITED LIABILITY COMPANY

sclark@tpglaws.com
Shawn R. Clark                                                                                          June 22, 2022
*Attorney for Claimant*

<u>**Via Electronic Mail**</u>
Equal Employment Opportunity Commission
33 Whitehall Street, 4th Floor
New York, New York 10004

    **Re:**    Our Client:    ALEXANDRA NOH (*Claimant*)
                                     -*against*-
                              ADMARKETPLACE, INC., *(Respondent)*

        **Nature of complaint:** Harassment, Sex/gender discrimination and Race discrimination.

Dear Madam or Sir:

   The following is a Charge of Discrimination based on harassment, sex/gender discrimination, and race discrimination which this office is filing on behalf of Alexandra Noh, against her previous employer, Admarketplace, Inc.

**We ask that all correspondence to Claimant be sent to this office for review and response.**

    Alexandra Noh
    c/o Shawn Clark
    Phillips & Associates
    45 Broadway, Suite 430
    New York, New York 10006

The name and address of the Respondent business and Individual Respondents against whom the Charge is made is:

    Admarketplace, Inc.
    c/o James Hill (CEO)
    1385 Broadway
    New York, NY 10017

The exact number of employees at the above entity is unknown, but upon information and belief, there are well more than the statutory minimum.

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act statement before completing this form.

_____ and EEOC
State or local Agency, if any

**AGENCY**
[ ] FEPA
[X] EEOC

**CHARGE NUMBER**

| | |
|---|---|
| **NAME** (Indicate Mr., Ms., Mrs.) ALEXANDRA NOH | **HOME TELEPHONE** (Include Area Code) (212) 248-7431 (Atty's #) |
| **STREET ADDRESS** C/O Shawn Clark Phillips & Associates 45 Broadway, Ste. 430 | **CITY, STATE AND ZIP CODE** New York, NY 10006 |
| | **DATE OF BIRTH** 03/15/1988 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME

| NAME ADMARKETPLACE, INC. | NUMBER OF EMPLOYEES, MEMBERS +15 | TELEPHONE (Include Area Code) (212) 925-2022 |
|---|---|---|
| STREET ADDRESS 1385 Broadway | CITY, STATE AND ZIP CODE New York, New York 10017 | COUNTY New York |
| NAME | NUMBER OF EMPLOYEES, MEMBERS: | TELEPHONE (Include Area Code) |
| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |

**CAUSE OF DISCRIMINATION BASED ON** (Check appropriate box (es))

[X] RACE  [ ] COLOR  [X] SEX  [ ] RELIGION  [ ] NATIONAL ORIGIN

[X] RETALIATION  [ ] AGE  [ ] DISABILITY  [ ] OTHER Pregnancy Act

**DATE DISCRIMINATION TOOK PLACE**
EARLIEST (ADEA/EPA) 10/26/2021
LATEST (ALL) 4/4/2022

[X] CONTINUING ACTION

THE PARTICULARS ARE (If additional space is needed, attach extra sheet(s))

**Complainant Alleges Discrimination Based on Ms. Noh's Sex/Gender, race, as well as Retaliation.**

*(Please see attached narrative / statement of facts.)*

[ ] I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone Number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the foregoing is true and correct.

Date: _____ Charging Party: _____

State of New York
County of New York to wit:

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

/s/ _____
SIGNATURE OF COMPLAINANT
DATE 07/09/22

Sworn to and subscribed to before the undersigned notary public in and for said jurisdiction this 9th day of June, 2022
My commission expires: 5/16/23

Notary Public

EEOC Form 5 modified

RICKY P RAMOS
Notary Public - State of New York
NO. 01RA6241188
Qualified in Queens County
My Commission Expires May 16, 2023

**RELEVANT PARTIES**

1. That at all times relevant hereto, Complainant ALEXANDRA NOH is a female and a resident of the State of New York and the County of Queens.

2. That at all times relevant hereto, Respondent ADMARKETPLACE, INC. ("ADMARKETPLACE") was and is a Foreign Business Corporation operating in the State of New York.

3. Respondent ADMARKETPLACE had the authority to hire, fire, or affect the terms and conditions of Complainant's employment.

4. That at all times relevant hereto, Complainant was an employee of Respondent ADMARKETPLACE.

5. At all times relevant, Respondent EUGENE KILBERG ("Respondent EUGENE") was employed by Respondent ADMARKETPLACE as the Director of User Experience (UX).

6. That at all times relevant hereto, Respondent EUGENE had supervisory authority over Complainant. Respondent EUGENE had the authority to hire, fire, or affect the terms and conditions of Complainant's employment, or to otherwise influence the decisionmaker of the same.

7. That at all times relevant hereto, Respondents ADMARKETPLACE, INC., and EUGENE KILBERG are collectively referred to herein as "Respondents."

**MATERIAL FACTS**

8. From on or about October 26, 2021, Complainant was hired by Respondents as a "UI/UX Product Designer" for Respondent ADMARKETPLACE, INC.

9. As a "UI/UX Product Designer," Complainant's responsibilities were included but not limited to communicating effectively with stakeholders, managers, developers, and end

   users to build products, then ensuring designs are properly translated into code, and present designs to management and stakeholders.

10. Since the beginning of Complainant's employment, Complainant was the victim of continuous and ongoing sexual harassment and a hostile work environment by her manager and supervisor Respondent EUGENE.

11. Since the beginning of Complainant's employment, Respondent EUGENE created a hostile working environment, which unreasonably interfered with Complainant's work environment by negatively impacting Complainant's ability to perform her job duties and inhibiting communication and working relationships with other colleagues.

12. During the course of Complainant's employment with Respondents, Respondent EUGENE harassed and made inappropriate comments towards Complainant. Complainant was shocked, disgusted, and offended by Respondent EUGENE's continued behavior.

13. On approximately ten (10) separate occasions from late October through December of 2021, Respondent EUGENE insisted on seeing Complainant's computer screen. On some of these occasions, Respondent EUGENE approached Complainant's chair from behind while Complainant was seated. He placed his left hand on the chair's back, which kept the chair firmly in place. On all of these occasions, Respondent EUGENE placed his right hand on top of Complainant's right hand to move her computer mouse.

14. On each occasion, Complainant would flinch and move her hand away, to which Respondent would respond "Oops, sorry." Complainant asked each time that Respondent EUGENE please view the same files on his own computer. Complainant would additionally send Respondent EUGENE said files so he could access them from his own computer.

       Nevertheless, Respondent EUGENE would then stay in place and use Complainant's computer mouse while speaking less that one (1) foot from her ear.

15. Respondent EUGENE would speak so closely to Complainant that Complainant was able to feel the heat from Respondent EUGENE's breath. On at least two (2) occasions, Respondent EUGENE was speaking in a manner which caused his spit to fall into Complainant's food.

16. In contrast, Complainant observed that Respondent EUGENE interacted with her male teammate and Senior UI/UX Designer David Noboa by instead seating himself at least two (2) feet away from David and letting David operate his own computer.

17. This behavior made Complainant feel violated, trapped, and appalled.

18. On or about the beginning of December of 2021, Complainant stood at her desk to put on her jacket. In order to do so, Complainant lifted up her arms above her shoulders. Respondent EUGENE watched Complainant intently as she did so and then stated "Lexy, your figure is so different from the Asian girls I've dated."

19. Complainant was shocked, appalled, and disturbed by this blatant sexual and racial discrimination and harassment. Complainant was too shocked to respond and immediately left the premises following this harassing comment.

20. Complainant did not give any indication that these sexual advances or comments were welcomed. Additionally, on more than one occasion, Complainant instructed, "Eugene, you can't say that" and "Eugene, that's extremely disrespectful."

21. This conduct occurred within earshot of numerous other employees. To Complainant's knowledge, no one addressed this issue.

22. Throughout the course of her employment, upon completion of various tasks for Respondent EUGENE, Respondent EUGENE would tell Complainant, "Lexy, you're such a *good* girl."

23. Complainant observed that Respondent would also make this statement to a female teammate, UX Designer Sarah Horowitz. Complainant, to date, has never observed Respondent EUGENE make this statement to her male teammate David Noboa.

24. Whenever Complainant disagreed with Respondent EUGENE, Respondent EUGENE would ask Complainant if it was "her time of the month," a blatant reference to her menstrual cycle. Complainant, to date, has never observed Respondent EUGENE make this statement to David Noboa.

25. When Complainant verbalized feeling too hot or cold in the office, Respondent EUGENE would state, "I know why! That's biology!" and said so while laughing.

26. Respondent's comments made Complainant feel sexualized, demeaned, and belittled.

27. On at least three (3) separate occasions, Respondent EUGENE commented on Complainant's diet. For example, when Complainant ate at her desk, Respondent EUGENE stated, "You shouldn't eat so much or you'll get too big."

28. On or about the end of November of 2021, Respondent EUGENE handed David Noboa a backpack with the adMarketplace logo, and stated to Complainant, "I didn't get one for you Lexy, because you girls only like brand name things."

29. On or about the end of December of 2021, employees of Respondent ADMARKETPLACE began working remotely due to the prevalence of the Omicron variant of COVID-19. Despite the remote nature of her employment from this point on, Respondent EUGENE's sexual harassment and gender discrimination towards Complainant continued.

30. On or about March 21, 2022, Respondent EUGENE informed Complainant that he was eating snacks from Complainant's desk drawers and told Complainant, "I'm helping you get rid of carbs," and that eating the snacks was "a favor to [her]" to help maintain her weight and figure.

31. Respondent EUGENE also referred to Complainant as "darling" on various occasions.

32. During team meetings via virtual video chat that occurred from on or about January of 2022 to the end of March of 2022, Complainant left her camera off to avoid being watched by Respondent EUGENE. Although other teammates had their cameras off as well, Respondent EUGENE stated, "Lexy, why are you hiding? Come out, come out, wherever you are!"

33. On or about January to February of 2022, Complainant observed that on 1-on-1 video calls with her, Respondent EUGENE placed himself in a different room than when on team calls. In the room where Respondent EUGENE conducted 1-on-1 calls, Complainant observed a photo of a naked woman on the wall behind Respondent EUGENE.

34. On one such occasion, Respondent EUGENE pointed out the photo without any provocation or inquiry. He explained that the photo was one of his ex-girlfriend. He then brought his laptop closer to the photo, forcing Complainant to look at it, while explaining how attractive his ex-girlfriend was and that she was a model.

35. On multiple occasions, Respondent EUGENE berated Complainant in front of other colleagues. On one such occasion on or about March 22nd or March 23rd of 2022, during a team video call, Respondent EUGENE was not paying attention while Complainant was explaining the answer to a question he asked.

36. Complainant responded, "We're going to talk about it in a few minutes."

37. To this, Respondent EUGENE became irate and screamed, "Lexy, it's a simple yes or no question – when I ask you a question – you answer it!"

38. Complainant's male teammate David Noboa then reiterated "Eugene, we're going to talk about it in a few minutes."

39. Respondent EUGENE immediately calmed down and stated, "THANK YOU, David."

40. Complainant felt shocked, offended, and abused by this discriminatory and outrageous treatment.

41. Following this team call, Respondent EUGENE demanded Complainant have a 1-on-1 call with him. This call lasted over ninety (90) minutes and consisted of Respondent EUGENE berating Complainant regarding her "disrespectful" behavior and undermining his authority. Respondent EUGENE stated, amongst other things, that Complainant was not to talk back to him, needed to change the way she spoke to him because he is her superior, and that if he asks questions, to never refer to any documents or files but to instead simplify the answer and tell him exactly what he wants to hear.

42. To Complainant's information and knowledge, Respondent EUGENE did not approach David Noboa for a 1-on-1 following this video call.

43. Complainant was incredibly shaken and disturbed by this treatment by Respondent EUGENE, especially since it threatened her job security.

44. Respondent EUGENE's harassment interfered with her duties and affected her mental health. Complainant actively tried to avoid having her video camera on during video calls and started shaking at the thought of returning to the office.

45. On or about March 29, 2022, Complainant reported this sexual harassment, gender and race discrimination to Claire Luckner, the Director of Human Resources.

46. On or about March 30, 2022, Complainant also reported this sexual harassment, gender and race discrimination to George Pappachen, Head of Business and Legal Affairs.

47. On or about March 30, 2022, George Pappachen stated in sum and substance, "We should have known. We should have done something about it."

48. On or about April 4, 2022, Complainant also discussed the allegations with Steven Read, Senior Vice President of Product Management and Respondent EUGENE's Supervisor.

49. During this conversation, Steven Read stated in sum and substance, "I've reflected on what I could have and should have done differently…"

50. Complainant has been overwhelmed with fear and distress from the sexually harassing environment.

51. Respondent ADMARKETPLACE knew or should have known of the discriminatory conduct.

52. Complainant has been humiliated, offended, and abused by Respondents.

53. Respondents created a hostile working environment, which unreasonably interfered with Complainant's work environment.

54. **Complainant was discriminated and harassed by Respondents, solely due to her sex/gender (female) and race/national origin**.

55. But for the fact that Complainant is a female and of Asian descent, Respondents would not have treated her differently.

56. Respondents' actions and conduct were intentional and intended to harm Complainant.

57. The above are just some of the ways Respondents discriminated and sexually harassed Complainant while employing her.

58. Corporate Respondents had knowledge of and/or acquiesced in the discrimination and/or harassment by Respondent EUGENE.

59. Complainant's performance was, upon information and belief, exemplary during the course of her employment with Respondents.

60. Complainant has been unlawfully discriminated against, sexually harassed, humiliated, degraded and belittled, and as a result, suffers loss of rights, and emotional distress.