UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------

ALEXANDRA NOH,

                            Plaintiff,

            – against –

ADMARKETPLACE, INC., *and*
EUGENE KILBERG *individually*,

                            Defendants.

-----------------------------------------------------------------

**OPINION & ORDER**

24 Civ. 2107 (ER)

RAMOS, D.J.:

Alexandra Noh ("Noh") brings this employment discrimination action against adMarketplace, Inc. ("adMarketplace") and Eugene Kilberg ("Kilberg," and together with adMarketplace "Defendants"), alleging that they discriminated against her throughout her employment on the basis of her gender and race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981, New York State Human Rights Law ("NYSHRL"), and New York City Human Rights Law ("NYCHRL"). Noh also alleges that Defendants retaliated[1] against her for complaining about the discriminatory treatment, fostered a hostile work environment, and caused her to resign, all in further violation of these federal and state statutes.

Defendants each move to dismiss the complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Docs. 25 and 27. For the reasons set forth below, the motions are GRANTED in part and DENIED in part.

---

[1] While Noh states she has pled a retaliation claim via constructive discharge in her pre-motion letter, she does not plead a retaliation claim in her complaint. She also does not address this argument in her motion papers, and has thus abandoned the argument. *See Arma v. Buyseasons, Inc.*, 591 F. Supp. 2d 637, 642–43 (S.D.N.Y. 2008) ("[T]he Court notes that Plaintiffs did not respond to Defendants' arguments in support of their motion to dismiss . . . and therefore the Court may deem the claim abandoned."). Therefore, to the extent Noh alleges a retaliation claim, the claim is dismissed.

I.     **BACKGROUND**

  **A.  Relevant Facts**

The following facts are drawn from allegations contained in the complaint, Doc. 7, which the Court accepts as true for purposes of the instant motion. *Koch v. Christie's International PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

Noh is an Asian woman who worked as a "UI/UX Product Designer" for adMarketplace for a period of six months from October 26, 2021 until she resigned at the end of April 2022.  Doc. 7 ¶¶ 14, 64.  Noh alleges that her supervisor, Kilberg, sexually harassed her and created a hostile work environment which unreasonably interfered with her ability to perform her job duties.  *Id.* ¶¶ 16–17.

Noh alleges that on approximately ten separate occasions, from the outset of her employment in late October through December 2021, Kilberg insisted on seeing her computer screen while she worked, and on some of these occasions, he placed his left hand on the back of her chair and placed his right hand on top of Noh's right hand to move her computer mouse.  *Id.* ¶ 19.  Kilberg would speak so closely to Noh (less than one foot from her ear) that she would be able to feel the heat from his breath.  *Id.* ¶¶ 20–21.  On at least two of these occasions, Kilberg was speaking so closely to Noh that his spit fell into her food.  *Id*. ¶ 21.  In contrast, Noh alleges that Kilberg would stand at least two feet away from her male colleague, David Noboa ("Noboa"), and allowed him to operate his own computer mouse.  *Id.* ¶ 22.

Noh alleges that at the end of November 2021, Kilberg gave Noboa a backpack with the company logo, but not to any of the female employees because, according to Kilberg, "girls only like brand name things."  *Id.* ¶ 35.  According to Noh, at the beginning of December 2021, Kilberg told her "Lexy, your figure is so different from the Asian girls I've dated."  *Id.* ¶ 24.  Throughout the course of her employment, Kilberg would often tell Noh and another female employee that they were such "good" girls.  *Id.* ¶¶ 28–29.  Whenever Noh disagreed with Kilberg, Noh states that he would ask her if it

was her "time of the month." *Id.* ¶ 30.  When Noh would comment on feeling too hot or too cold, Kilberg would laugh and say "I know why! That's biology!" *Id.* ¶ 32.

In late 2021, Noh, Noboa, and Kilberg were discussing an upcoming trip to Miami and Noh knew that Kilberg would be staying in a much nicer room than her and Noboa. *Id.* ¶¶ 53–54.  She jokingly told Kilberg "[w]e should trade rooms," to which he cornered her and responded "[y]ou shouldn't joke around about sharing rooms with me." *Id.* ¶¶ 54–55.  Noh told him that her intent was not to suggest the two of them share a room, to which Kilberg smirked while stating he must have misheard. *Id.* ¶ 56.

Noh states that at the end of December 2021, all adMarketplace employees began working remotely due to the advent of the Omicron variant of COVID-19. *Id.* ¶ 36.  Noh alleges that she was granted the ability to work from home "indefinitely." *Id.* ¶ 62. "Despite the remote nature of her employment from this point on," Noh notes that "[Kilberg's] sexual harassment and gender discrimination towards [her] continued." *Id.* ¶ 36.

There was an instance in the beginning of 2022 when, during a video conference, Noh and her teammates all had their cameras off, but Kilberg only targeted her by saying "Lexy, why are you hiding? Come out, come out, wherever you are!" *Id.* ¶ 39.  During this same time period, Kilberg had a one-on-one call with Noh, where he pointed to a photo of a naked woman on the wall behind him and forced Noh to look at it while explaining that it was his ex-girlfriend. *Id.* ¶¶ 41–42.

Kilberg would allegedly comment on Noh's diet, saying "You shouldn't eat so much, or you'll get too big." *Id.* ¶ 34.  On March 21, 2022, Kilberg took snacks from Noh's desk and told her "I'm helping you get rid of carbs" and that eating the snacks from her desk was "a favor to [her]," insinuating that he is helping her keep her weight and figure. *Id.* ¶ 37.  Kilberg also allegedly referred to Noh as "darling" many times throughout her time at the company. *Id.* ¶ 38.

Noh alleges that there were multiple other occasions where Kilberg berated her in front of other colleagues. For example, during a video conference on March 22 or March 23 of 2022, Kilberg allegedly became irate when Noh responded to a question he asked by saying they would talk about that specific topic in a few minutes. *Id.* ¶ 44. In response, Kilberg screamed "Lexy, it's a simple yes or no question — when I ask you a question — you answer it!" *Id.* ¶ 45. Noh states that her male colleague, Noboa, chimed in and said "Eugene, we're going to talk about it in a few minutes." *Id.* ¶ 46. Kilberg demanded to have a one-on-one call with Noh that lasted over ninety-minutes, where he berated her about her behavior and undermining his authority. *Id.* ¶ 49. Noboa, on the other hand, was not reprimanded and was not required to have a one-on-one meeting with Kilberg. *Id.* ¶ 50.

Noh reported these events to Claire Luckner, the Director of Human Resources at the company on March 29, 2022. *Id.* ¶ 57. Noh also reported the events to George Pappachen, Head of Business and Legal Affairs, on March 30, 2022. *Id.* ¶ 58. Noh alleges that on that same day, Pappachen responded by saying "[w]e should have known. We should have done something about it." *Id.* ¶ 59. Finally, Noh reported these events to Steven Read, Kilberg's supervisor and Senior Vice President of Product Management, on April 4, 2022. *Id.* ¶ 60. During the conversation, Read responded by saying "I've reflected on what I could have and should have done differently . . . ." *Id.* ¶ 61.

Noh alleges that she requested to work from home indefinitely because she felt unsafe and would be triggered to return to the physical space that led to her psychological trauma. *Id.* ¶ 62. She informed both Pappachen and Read of the "'intolerable' environment should she be forced to return to the office and [ ] they 'subsequently' and 'deliberately' mandated [her to] return [to the office]."[2] Doc. 29 at 8 (citing Doc. 7 ¶¶

---

[2] adMarketplace states in their motion to dismiss that Noh's complaint makes no mention of the fact that Kilberg was terminated by adMarketplace on March 31, 2022, two days after Noh complained about him and well before her resignation in late April 2022. Doc. 26 at 1 n. 2. Noh does not address in the complaint Kilberg's employment status after her internal complaints. Doc. 7.

62–63). Noh states she had previously been granted the ability to work from home indefinitely. Doc. 7 ¶ 62.

Noh resigned at the end of April 2022, citing neglect and an insufficient response to her reports of discrimination and sexual harassment. *Id.* ¶ 64. Noh claims she has been unlawfully discriminated against, sexually harassed, humiliated, degraded, and belittled, and as a result, suffered loss of rights, and emotional distress. *Id.* ¶ 74.

### B. Procedural History

Noh filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on June 22, 2022 and received a Notice of Right to Sue from the EEOC on January 3, 2024. *Id.* ¶ 5, Doc. 30-1. Noh filed the instant suit on March 21, 2024, within 90 days of the issuance of the Notice of Right to Sue. Doc. 7. Defendants moved to dismiss the case pursuant to Federal Rule of Civil Procedure 12(b)(6) on July 30, 2024. Docs. 25 and 27.

Defendants argue that because Noh fails to plead that her working conditions were objectively intolerable or that adMarketplace deliberately forced her to resign because of any protected category or activity, her constructive discharge claims should be dismissed. Doc. 26 at 2. Defendants also argue that Noh fails to state a claim of gender or race discrimination, or retaliation because she fails to plausibly claim that any adverse employment action occurred under circumstances from which an inference of discrimination or retaliation may be inferred. *Id.* Finally, Defendants argue that Noh does not offer sufficient facts demonstrating that she suffered a hostile work environment, as the incidents that she alleges are nothing more than petty slights or trivial inconveniences. *Id.* at 3. Both Defendants move to dismiss Noh's complaint in full.

## II.    LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).  The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 556).  However, this "flexible plausibility standard" is not a heightened pleading standard.  *In re Elevator Antitrust Litigation*, 502 F.3d 47, 50 n.3 (2d Cir. 2007) (internal quotation marks and citation omitted), and "a complaint . . . does not need detailed factual allegations" to survive a motion to dismiss.  *Twombly*, 550 U.S. at 555.

The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)).  Indeed, "the purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits" or "weigh[ing] the evidence that might be offered to support it." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal quotation marks and citation omitted).  Thus, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor.  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).  In considering a Rule 12(b)(6) motion, a district court may also consider "documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *Doe v. New York University*, No. 20 Civ. 1343 (GHW), 2021 WL 1226384, at *10 (S.D.N.Y. Mar. 31, 2021) (quoting *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010)).

III.    **DISCUSSION**

    **A. Federal Claims under Title VII and 42 U.S.C. § 1981**

    *1. Hostile Work Environment*

In order to establish a claim for hostile work environment under Title VII and 42 U.S.C. § 1981, the harassment must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Terry v. Ashcroft*, 336 F.3d 128, 147 (2d Cir. 2003) (quoting *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002)).  A plaintiff must establish that the complained of conduct:  (1) "is objectively severe or pervasive—that is, . . . creates an environment that a reasonable person would find hostile or abusive;" (2) creates an environment "that the plaintiff subjectively perceives as hostile or abusive;" and (3) "creates such an environment because of the plaintiff's" protected characteristic.  *Patane v. Clark*, 508 F.3d 106, 113 (2d. Cir. 2007) (quoting *Gregory v. Daly*, 243 F.3d 687, 691–92 (2d Cir. 2001)).  A workplace can be regarded as hostile if it is "permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993).

In determining whether a hostile work environment claim exists, courts must look at the "totality of the circumstances."  *Terry*, 336 F.3d at 148 (quoting *Richardson v. New York State Department of Correctional Service*, 180 F.3d 426, 437–38 (2d Cir. 1999)).  Among the factors to consider are "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Id.* (quoting *Harris*, 510 U.S. at 23).  Incidents must be "sufficiently continuous and concerted in order to be deemed pervasive."  *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997) (internal quotation marks and citations omitted).  While single, isolated acts usually do not fulfill the requirement, a single act may "meet the threshold

if, by itself, it can and does work a transformation of the plaintiff's workplace." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002)); *see also Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d Cir. 2000).

Here, Noh's hostile work environment claim is predicated on allegations that Kilberg: positioned himself very closely to her and put his hand over hers to move her computer mouse on ten separate occasions; made gender based and sexually harassing comments, such as "Lexy, your figure is so different from the Asian girls I've dated," "Lexy, you're such a *good* girl;" asked Noh if it was "her time of the month" when she disagreed with him; and said "That's biology" when Noh complained about feeling hot or cold in the office. Doc 7. ¶¶ 19, 24, 28, 30, 32. Kilberg also told Noh that "[she] shouldn't eat too much, or [she'll] get too big," ate Noh's snacks and told her that by doing so he was doing her "a favor . . . to help [her] maintain her weight and figure." *Id*. ¶¶ 34, 37. He also referred to Noh as "darling" on multiple occasions. *Id*. ¶ 38.

In late 2021, when she jokingly told Kilberg "[w]e should trade [hotel] rooms," he cornered her and responded "[y]ou shouldn't joke around about sharing rooms with me." *Id.* ¶¶ 54–55. Noh told him that her intent was not to suggest the two of them share a room, to which Kilberg smirked while stating he must have misheard. *Id.* ¶ 56. Noh also notes during a video conference at the beginning of 2022 where she and her teammates had their cameras off, Kilberg only targeted her by saying "Lexy, why are you hiding? Come out, come out, wherever you are," which made Noh feel "belittled and targeted." *Id.* ¶¶ 39–40. During this same time period, Kilberg had a one-on-one call with Noh, where he pointed to a photo of a naked woman on the wall behind him and forced Noh to look at it and told her that it was his ex-girlfriend. *Id.* ¶¶ 41–42.

Noh alleges that there were multiple other occasions where Kilberg berated her in front of other colleagues, such as an occasion that took place March 22 or March 23 of 2022, wherein Kilberg became irate when Noh told him they would talk about a specific topic in a few minutes and screamed "Lexy, it's a simple yes or no question — when I

ask you a question — you answer it!" *Id.* ¶¶ 43–45. She claims she was "incredibly shaken and disturbed by this treatment . . . especially since it threatened her job security." *Id*. ¶ 51. Moreover, Noh alleges that she reported this sexual harassment, and gender and race discrimination to three different individuals in managerial positions to no avail. *Id*. ¶¶ 57–61.

Noh's hostile work environment claim plausibly describes an objectively severe or pervasive hostile work environment that could have reasonably interfered with her ability to work—especially in light of the number of alleged derogatory statements. *See, e.g.*, *Schiano v. Quality Payroll Systems, Inc.*, 445 F.3d 597, 606–07 (2d Cir. 2006) (citing *Harris*, 510 U.S. at 25 (Scalia, J., concurring)) (clarifying that whether harassment interferes with an employee's ability to work is only one factor to be considered when looking at the totality of circumstances to determine whether a hostile work environment has been created. "[T]he test is not whether work has been impaired, but whether working conditions have been discriminatorily altered."). She thus satisfies the first element of a hostile work environment claim.

Regarding the second element, Noh has sufficiently pled she subjectively perceived her work environment as hostile or abusive. *Torres v. Pisano*, 116 F.3d 625, 631 (2d Cir. 1997) (concluding that "general allegations of constant abuse" create a jury question as to severity and pervasiveness "even in the absence of specific details about each incident"). The Court concludes that Noh has alleged sufficient facts to be "entitled to offer evidence to support her claim." *See Patane*, 508 F.3d at 115 (vacating district court's dismissal of hostile work environment claim because plaintiff pled facts sufficient to satisfy all three prongs of the test for a hostile work environment pursuant to Title VII).

As to the third element, Noh alleges that "but for the fact that [she] is a female and of Asian descent, Defendants would not have treated her differently." Doc. 7 ¶ 69. In this regard, and as discussed above, Noh refers to numerous instances when Kilberg

9

referred to her Asian descent and gender when making the purportedly discriminatory statements. Thus, Noh sufficiently shows that Kilberg created an intolerable environment because of her protected characteristics as an Asian woman. The Court therefore DENIES Defendants' motions to dismiss the hostile work environment claim pursuant to Title VII and 42 U.S.C. § 1981.

### 2. *Constructive Discharge*

Although constructive discharge is not explicitly alleged in her complaint, Noh states that "[o]n or about the end of April of 2022, overwhelmed with fear and distress from the sexually harassing environment, [she] tendered her resignation due to the neglect and insufficient response to her reports of discrimination and sexual harassment." Doc. 7 ¶ 64. The Court thus construes Noh's pleading as asserting such a claim. As an initial matter, Defendants argue that Noh cannot sustain a claim based on her resignation, because she failed to exhaust such a claim. Doc. 26 at 6.

"Constructive discharge" has two legally relevant meanings in employment discrimination actions. *Atkinson v. Singh*, No. 19 Civ. 3779 (VSB), 2022 WL 137634, at *14 (S.D.N.Y. Jan. 14, 2022) (citing *Bright-Asante v. Saks & Co., Inc.*, 242 F. Supp. 3d 229, 243 (S.D.N.Y. 2017) (citation omitted)). The first is as an independent *claim* for relief that can be categorized as a "hostile-environment constructive discharge" claim. *Id*. This type of constructive discharge claim "requires that a plaintiff sufficiently allege a hostile work environment in order to adequately allege a constructive discharge claim." *Id*. "Where an alleged constructive discharge stems from an alleged hostile work environment, a plaintiff 'must show working conditions so intolerable that a reasonable person would have felt compelled to resign,'" which amounts to a "standard [that is] . . . higher than a standard for establishing hostile work environment." *Id*. (citing *Fincher*, 604 F.3d at 725).

Constructive discharge may also be asserted as the adverse employment action *element* of a separate employment discrimination claim. Since "[a] constructive

discharge is 'functionally the same as an actual termination,'" it "therefore is considered an adverse employment action." *Id*. (citing *Dall v. St. Catherine of Siena Medical Center*, 966 F. Supp. 2d 167, 177 (E.D.N.Y. 2013)). "Adverse employment actions include discharge from employment. Such a discharge may be either an actual termination of the plaintiff's employment by the employer or a 'constructive' discharge." *Id*. (quoting *Fitzgerald v. Henderson*, 251 F.3d 345, 357 (2d Cir. 2001)). Generally, to assert constructive discharge as an adverse employment action, a plaintiff must show that "rather than discharging [her] directly, [her employer] intentionally create[d] a work atmosphere so intolerable that [she was] forced to quit involuntarily." *Pryor v. Jaffe & Asher, LLP*, 992 F. Supp. 2d 252, 261 (S.D.N.Y. 2014) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 151–52 (2d Cir. 2003)). Work conditions are "intolerable if they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 73 (2d Cir. 2000) (quoting *Chertkova v. Connecticut General Life Insurance Co.*, 92 F.3d 81, 89 (2d Cir. 1996)). The Court's inquiry is an objective one. The Court will analyze both uses of "constructive discharge" in turn.

A hostile work environment constructive discharge claim as a "compound claim" requires a plaintiff to allege both that the offending behavior was so severe or pervasive that it created an "abusive working environment," and that the environment was so intolerable that a reasonable person would have felt compelled to resign. *Pennsylvania State Police v. Suders*, 542 U.S. 129, 147 (2004). Noh's hostile-environment constructive discharge claim fails in this regard. adMarketplace argues in their reply that Noh has not and cannot allege that Kilberg remained employed after she complained about his behavior. Doc. 32 at 2. According to adMarketplace, Kilberg no longer worked for the company at the time of Noh's resignation. Doc. 26 at 1 n. 2. However, Noh makes no such allegation. Instead, she states that she requested to not be forced to come back into the office, where she "felt unsafe and would be triggered by the physical

space that led to her psychological trauma." Doc. 7 ¶ 62. Accordingly, while there is no allegation that Noh would be forced to work with Kilberg, she implicitly acknowledges his absence but states she would nonetheless be triggered by having to return to the "physical space." *Id.*

The Court finds that Noh has not sufficiently pled that returning to work in the office (when the sole alleged perpetrator was no longer employed there) would make work so intolerable that a reasonable person would have no choice but to resign. There are cases with facts more egregious than those alleged in the instant case, where constructive discharge claims have been dismissed. *See Tulino v. Ali*, No. 15 Civ. 7106 (JSR), 2019 WL 1447134, at *2 (S.D.N.Y. Feb. 27, 2019), *aff'd sub nom. Tulino v. City of New York*, 813 F. App'x 725 (2d Cir. 2020) (no constructive discharge claim where plaintiff resigned after defendant told her that employees at the company were expected to engage in sexual activity to advance professionally, grabbed her without her consent, tried to kiss her multiple times, and was transferred to another supervisor); *see also Milne v. Navigant Consulting*, No. 08 Civ. 8964 (NRB), 2009 WL 4437412 (S.D.N.Y. Nov. 30, 2009) (dismissing constructive discharge claim where plaintiff's direct supervisor told her "you won't sit on my lap and keep me warm" and "you are not too young for me," and where another superior made inappropriate comments towards her and grabbed her by the arm).

While Noh has sufficiently alleged that the offending behavior created an "abusive working environment," her argument fails at the second prong because the harassment is not alleged to have continued between March 31, 2022 and her resignation in late April 2022. Doc. 26 at 1 n. 2. The Court finds that Noh has not sufficiently pled that the conditions created by adMarketplace were "so difficult or unpleasant that a reasonable person in [ ] [Noh's] shoes would have felt compelled to resign." *Pena v. Brattleboro Retreat*, 702 F.2d 322, 325 (2d Cir. 1983).

Noh's hostile work environment constructive discharge claim pursuant to Title VII and 42 U.S.C. § 1981 is therefore DISMISSED.

### 3. Discrimination

Employment discrimination claims under Title VII and § 1981 are analyzed under the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Kovaco v. Rockbestos*, 834 F.3d 128, 136 (2d Cir. 2016). Under that framework, the plaintiff must first establish a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to offer a legitimate, nondiscriminatory reason for its actions. *Id*. at 802–03. If the defendant satisfies its burden, the burden shifts back to the plaintiff to demonstrate that the proffered reason is pretextual. *Id*. at 803. Ultimately, the plaintiff will be required to prove that the defendant acted with discriminatory motivation. *See Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015). At the pleading stage, however, the facts alleged must merely "give plausible support to the reduced prima facie requirements that arise under *McDonnell Douglas* in the initial phase" of the case. *Id*. at 312. Thus, the question on a motion to dismiss is whether the plaintiff has adequately pleaded a prima facie case.

In order to establish a prima facie case of discrimination under either Title VII and § 1981, the plaintiff must show that (1) she belongs to a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discriminatory intent. *See Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003).

Noh is an Asian female. Doc. 7 ¶¶ 2, 6. Noh thus qualifies for protection pursuant to Title VII and § 1981. *See* 42 U.S.C. § 2000e-2 (2012) (listing race and sex among the classes protected under Title VII); *see also* 42 U.S.C. § 1981(a) (stating that "[a]ll persons within the jurisdiction of the United States shall have the same right in

every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens.").

According to Noh, her "essential job functions" as a UI/UX Product Designer at adMarketplace required that she communicate effectively with stakeholders, managers, developers, and end users to build products, then ensure designs are properly translated into code, and present designs to management and stakeholders. Doc. 7 ¶ 15. adMarketplace does not argue that Noh could not perform these tasks. The Court thus finds that Noh sufficiently alleges she was qualified for her position.

The third element requires Noh to prove that she suffered an adverse employment action. To prove adverse employment action based on constructive discharge, a plaintiff must show that "rather than discharging [her] directly, [her employer] intentionally create[d] a work atmosphere so intolerable that [she was] forced to quit involuntarily." *Pryor v. Jaffe & Asher, LLP*, 992 F. Supp. 2d 252, 261 (S.D.N.Y. 2014) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 151–52 (2d Cir. 2003)). Work conditions are "intolerable" if they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign. *Whidbee*, 223 F.3d at 73.

Noh does more than merely allege that she resigned simply because she was not allowed to work from home. She alleges that she requested to work from home indefinitely because she felt unsafe and would be triggered by returning to the physical space that led to her psychological trauma. Doc. 7 ¶ 62. Noh claims she was denied this accommodation, even though she had been previously granted the ability to work from home indefinitely, and that she faced a materially adverse employment action by being required to return to the office. Doc. 7 ¶¶ 62–63. However, adMarketplace argues in their motion to dismiss that Noh does not allege "when and how this alleged entitlement to [work] remotely 'indefinitely' even came from. Nor could she, as Plaintiff's Complaint makes clear that the reason why employees of adMarketplace, including

14

Plaintiff, were working from home for a period of time was due to the Omicron variant of COVID-19." Doc. 26 at 10 (citing Doc. 7 ¶ 36).

The Court finds that a reasonable employee in Noh's shoes would not have felt compelled to resign. *Cf. Suders*, 542 U.S. at 134 (holding constructive discharge may be shown "if the plaintiff quits in reasonable response to an employer-sanctioned adverse action officially changing her employment status or situation, for example, a humiliating demotion, extreme cut in pay, or transfer to a position in which she would face unbearable working conditions"). Noh alleges that she informed both Pappachen and Read of the "'intolerable' environment she would face should she be forced to return to the office and that they 'subsequently' and 'deliberately' mandated [her] [physical] return [to the office]." Doc. 29 at 8 (citing Doc. 7 ¶¶ 62–63).

adMarketplace argues that Noh was being treated the same as other employees by being required to return to the office. Doc. 32 at 3. Although Defendants allege that Kilberg was terminated on March 31, 2022, two days after Noh complained about him and well before her resignation in late April 2022, Noh does not explicitly allege whether or not Kilberg remained employed at the company. Doc. 26 at 1 n. 2. Regardless, Noh cannot allege constructive discharge as the adverse employment action element of her discrimination claim, as being required to return to the office did not constitute an adverse employment action. *Atkinson v. Singh*, No. 19 Civ. 3779 (VSB), 2022 WL 137634, at *14 (S.D.N.Y. Jan. 14, 2022).

However, the Court does find that Noh suffered other adverse consequences. The "landscape has changed with the Supreme Court's decision in *Muldrow v. City of St. Louis*, [601 U.S. 346] (2024)." *Anderson v. Amazon.com, Inc.*, No. 23 Civ. 8347 (AS), 2024 WL 2801986, at *10 (S.D.N.Y. May 31, 2024). In *Muldrow*, the plaintiff claimed that the defendant transferred her from one job to another because of her sex. 601 U.S. at 350. The lower courts granted the defendant's motion for summary judgment, reasoning that "the transfer did not cause [the plaintiff] a 'significant' employment disadvantage."

*Id.* The Supreme Court "disapprove[d] that approach," holding that "[a]lthough an employee must show some harm from a forced transfer to prevail in a Title VII suit, she need not show that the injury satisfies a significance test." *Id.* Focusing on the text of Title VII's anti-discrimination provision, the Supreme Court explained that the statutory language "requires [a plaintiff] to show that the transfer brought about some 'disadvantageous' change in an employment term or condition." *Id.* at 354 (citation omitted). In other words, "[t]o make out a Title VII discrimination claim, a transferee must show some harm respecting an identifiable term or condition of employment." *Id.* at 347. "What the transferee does not have to show . . . is that the harm incurred was '*significant*.' Or serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." *Id.* at 355 (emphasis added) (citation omitted).

While the parties do not explicitly address the holding in *Muldrow*, the Court follows many others in extending the holding in *Muldrow* beyond only Title VII discrimination cases involving *transfers*. *See, e.g., Peifer v. Board of Probation and Parole*, 106 F.4th 270, 277 (3d Cir. 2024) (applying *Muldrow* to non-transfer case); *Cole v. Group Health Plan, Inc.*, 105 F.4th 1110, 1114 (8th Cir. 2024) (same); *Williams v. Memphis Light, Gas & Water*, No. 23 Civ. 5616 (RSB), 2024 WL 3427171, at *5–6 (6th Cir. July 6, 2024) (same); *Riggs v. Akamai Technologies*, No. 23 Civ. 6463 (LTS), 2024 WL 3347032, at *6 (S.D.N.Y. July 8, 2024) (same). To the extent that pre-*Muldrow* decisions imposed a higher threshold for finding an adverse employment action, those decisions appear to no longer be good law. *Mitchell*, 2024 WL 3849192, at *9 (quoting *Packer ex rel. 1-800-Flowers.Com, Inc. v. Raging Capital Management, LLC*, 105 F.4th 46, 54 n.36 (2d Cir. 2024)) ("In rare cases, a district court can decline to follow our precedent if it concludes that an intervening Supreme Court decision has so clearly undermined our precedent that it will almost inevitably be overruled.").

Noh alleges she was discriminated and harassed by Defendants, solely due to her gender and race. *Id.* ¶ 68. She claims she was "incredibly shaken and disturbed by [Kilberg's] treatment . . . especially since it threatened her job security." *Id.* ¶ 51. Under *Muldrow*—which imposes a lower burden—the Court finds that Noh has adequately pleaded that she was subjected to adverse employment actions. *See Muldrow*, 601 U.S. at 354. As the Supreme Court made clear, "[t]erms or conditions" in an employment discrimination claim cover more than the "economic or tangible" factors and applies beyond a "narrow contractual sense." *Id.* Like the plaintiff in *Muldrow*, Noh experienced a loss that left her "worse off." Thus, the Court finds that Noh has pleaded sufficient facts that she suffered an adverse employment action.

Noh's allegations concerning the fourth element—whether her treatment took place under circumstances giving rise to an inference of discrimination—are also sufficient. To be sure, "[t]he sine qua non of a . . . discriminatory action claim under Title VII is that the discrimination must be because of [the protected characteristic]." *Bivens v. Institute for Community Living, Inc.*, No. 14 Civ. 7173 (PAE), 2015 WL 1782290, at *7 (S.D.N.Y. Apr. 17, 2015) (Engelmayer, J.) (internal quotation marks omitted) (emphasis in original) (citing *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007)).

As the Second Circuit has explained, "it is well settled that an inference of discriminatory intent may be derived from a variety of circumstances, including, but not limited to: the employer's criticism of the plaintiff's performance in [ ] degrading terms [related to the protected characteristic]; or its invidious comments about others in the employee's protected group; or the more favorable treatment of [similarly situated] employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Id.* at *8 (internal quotation marks, ellipses, and citations omitted). At the pleading stage, however, a plaintiff need not plead facts giving plausible support to the "ultimate question" of whether an adverse action was attributable to discrimination;

rather, the facts need only give plausible support to a "minimal inference"

of discriminatory motivation. *Littlejohn*, 795 F.3d at 311.

The Second Circuit has also clarified that "the inference of discriminatory intent

supported by the pleaded facts [need not] be the most plausible explanation of the

defendant's conduct.  It is sufficient if the inference of discriminatory intent is plausible."

*Doe v. Columbia University*, 831 F.3d 46, 57 (2d Cir. 2016) (emphasis in original); *see*

also *Dawson v. New York City Transit Authority*, 624 F. App'x 763, 770 (2d Cir. 2015)

(summary order) ("At the pleading stage, district courts would do well to remember this

exceedingly low burden that discrimination plaintiffs face . . .").  Such circumstances can

include "actions or remarks made by decisionmakers that could be viewed as reflecting

discriminatory animus."  *LaSalle v. City of New York*, No. 13 Civ. 5109, 2015 WL

1442376 (PAC), at *2 (S.D.N.Y. Mar. 30, 2015) (internal quotation marks and citation

omitted).  "If there is no direct evidence of an employer's discriminatory intent,

[p]laintiff then has to show that the employer treated plaintiff less favorab[ly] than a

similarly situated employee outside his protected group but who is similar in all material

respects to the individual whom he seeks to compare himself with."  *Doroz v. Tect Utica

Corp.*, No. 12 Civ. 391, 2015 WL 1897134 (MAD) (ATB), at *7 (N.D.N.Y. Apr. 27,

2015) (internal quotation marks and citations omitted).

Kilberg's disparate treatment of Noh compared to his treatment of Noboa is

alleged throughout Noh's complaint.  Doc. 7 ¶¶ 22, 29, 31, 35, 47, 50.  Noh has alleged

that she suffered adverse employment actions, such as sexual harassment, receiving

reprimands, and denial of her the ability to work from home indefinitely after she

reported Kilberg's behavior to three superiors.  *Id*. ¶¶ 16–63.  Kilberg's alleged

comments were indisputably derogatory remarks that related to Noh's gender and race;

Kilberg was also Noh's supervisor at the time he made the alleged comments.  *Id*. ¶¶ 12,

16–56.

The foregoing is sufficient to allow the claim to proceed because at this juncture, the "ultimate question" of whether an adverse action was attributable to discrimination, need not be proven. *Littlejohn*, 795 F.3d at 311. Accordingly, Defendants' motions to dismiss Noh's gender and race discrimination claims pursuant to Title VII and 42 U.S.C. § 1981 are DENIED.

### B. State Law Claims

### 1. *Constructive Discharge Claims*

### a. *NYSHRL*

"An employee is constructively discharged when [her] employer, rather than discharging [her] directly, intentionally creates a work atmosphere so intolerable that [she] is forced to quit involuntarily." *Terry*, 336 F.3d at 151–52. The standard for constructive discharge "is higher than the standard for establishing a hostile work environment." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 725 (2d Cir. 2010). A constructive discharge claim under Title VII and the NYSHRL "requires the employee to show both (1) that there is evidence of the employer's intent to create an intolerable environment that forces the employee to resign, and (2) that the evidence shows that a reasonable person would have found the work conditions so intolerable that he would have felt compelled to resign." *Shultz v. Congregation Shearith Israel of the City of New York*, 867 F.3d 298, 308 (2d Cir. 2017) (citation omitted); *see Mascola v. City University of New York*, 787 N.Y.S.2d 655, 655 (App. Div. 1st Dep't 2005) (noting that "gender-based employment violations under the [NYSHRL]"— including constructive discharge—"are keyed to federal standards").

Noh's NYSHRL claims are insufficient for the same reasons the claims pursuant to Title VII and 42 U.S.C. § 1981 are insufficient. Accordingly, Defendants' motions to dismiss Noh's constructive discharge claim under the NYSHRL are GRANTED.

### b. NYCHRL

The standard for a constructive discharge claim under the NYCHRL is similar to the federal and NYSHRL standard.  *See E.E.O.C. v. Bloomberg L.P.*, 29 F. Supp. 3d 334, 338–39 (S.D.N.Y. 2014).  "To prevail on a claim of constructive discharge" under the NYCHRL, "the plaintiff must prove that the employer 'deliberately created working conditions so intolerable, difficult or unpleasant that a reasonable person would have felt compelled to resign.'"  *Tulino v. Ali*, No. 15 Civ. 7106 (JSR), 2019 WL 1447134, at *3 (S.D.N.Y. Feb. 27, 2019) (quoting *Short v. Deutsche Bank Sec., Inc.*, 913 N.Y.S.2d 64, 66 (App. Div. 1st Dep't 2010)).

Noh's allegations must necessarily be insufficient here for the same reasons set forth above.  Accordingly, Defendants' motions to dismiss Noh's constructive discharge claim under the NYCHRL are GRANTED.

### 2. State Law Hostile Work Environment Claims

### a. NYSHRL

To prevail on a hostile work environment claim pursuant to § 1981, Title VII, or NYSHRL, Noh must show that "the harassment was 'sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment.'" *Feingold v. New York*, 366 F.3d 138, 149 (2d Cir. 2004) (quoting *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002)).  In determining whether such an environment exists, courts "must distinguish between merely offensive or boorish conduct and conduct that is sufficiently severe or pervasive as to alter the conditions of employment."  *See Lenart v. Coach Inc.*, 131 F. Supp. 3d 61, 66 (S.D.N.Y. 2015) (quoting *O'Dell v. Trans World Entertainment Corp.*, 153 F. Supp. 2d 378, 386 (S.D.N.Y. 2001)).  Courts may look to "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance," when making such determinations. *Harris*, 510 U.S. at 23.

Noh's allegations must necessarily be sufficient for the same reasons the claims pursuant to Title VII and 42 U.S.C. § 1981 are sufficient. Accordingly, Defendants' motions to dismiss Noh's hostile work environment claim under the NYSHRL are DENIED.

### b.  NYCHRL

To make out a hostile work environment claim under NYCHRL, a plaintiff need not allege "either materially adverse employment actions or severe and pervasive conduct." *Mihalik v. Credit Agricole Cheuvreux North America, Inc.*, 715 F.3d 102, 114 (2d Cir. 2013). Rather, a plaintiff must show only "unequal treatment based upon membership in a protected class." *Nieblas-Love v. New York City Housing Authority*, 165 F. Supp. 3d 51, 68 (S.D.N.Y. 2016). While it is true that under NYCHRL's more lenient standards a complainant need only show that he or she was treated "less well" due to discriminatory intent, it remains the case that "petty slights and trivial inconveniences" are not actionable. *Mihalik*, 715 F.3d at 111. Ultimately meeting this standard requires showing that the plaintiff "has been treated less well at least in part because of her membership in a protected class." *Wilson v. JPMorgan Chase Bank, N.A.*, No. 20 Civ. 4558 (JMF), 2021 WL 5179914, at *5 (S.D.N.Y. Nov. 8, 2021).

Noh's allegations must necessarily be sufficient under this more liberal burden for the same reasons set forth above. Accordingly, Defendants' motions to dismiss Noh's hostile work environment claims under the NYCHRL are DENIED.

### 3.  State Law Discrimination Claims

The Court finds that Noh has met the "exceedingly low" burden of demonstrating a plausible minimal inference of discrimination based on gender and race.

### a.  NYSHRL

To establish a prima facie case for employment discrimination under the NYSHRL, a plaintiff must show that (1) she is a member of a protected class; (2) she was qualified for the position she held; (3) she suffered an adverse employment action; and

(4) the adverse action took place under circumstances giving rise to the inference of discrimination. *Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 247 (E.D.N.Y. 2015).

Noh's allegations must necessarily be sufficient for the same reasons the claims pursuant to Title VII and 42 U.S.C. § 1981 are sufficient. Accordingly, Defendants' motions to dismiss Noh's discrimination claims under the NYSHRL are DENIED.

### b. NYCHRL

Unlike Title VII and NYSHRL claims, "NYCHRL claims . . . are reviewed independently from and more liberally than their federal and state counterparts." *LaSalle*, 2015 WL 1442376 at *3 (internal quotation marks and citation omitted). This means that a complaint may fail to state a claim under Title VII and the NYSHRL, but still be allowed to proceed under the NYCHRL. However, a complaint alleging a NYCHRL claim must still allege facts on the basis of which a court can find differential treatment— i.e. the plaintiff was "treated less well" because of a discriminatory intent. *Id*. at *5–*6 (citations omitted). Courts must be mindful that the NYCHRL is not a general civility code; the plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive, i.e., because of the protected characteristic. *See Soloviev*, 104 F. Supp. 3d at 250.

Noh's allegations must necessarily be sufficient under this more liberal burden for the same reasons set forth above. Accordingly, Defendants' motions to dismiss Noh's discrimination claims under the NYCHRL are DENIED.

### C. Vicarious Liability

The NYCHRL makes it unlawful for "an employer or an employee or agent thereof" to discriminate on the basis of gender and race. *Doe v. Bloomberg, L.P.*, 167 N.E.3d 450, 454 (2021) (citing Administrative Code of City of N.Y. § 8–107[1][a])). The statute also prohibits "any person" from aiding and abetting discrimination (*id*. § 8–107[6]) or from retaliating against another person for engaging in certain protected

22

activities (*id*. § 8–107[7]).  The NYCHRL also imposes vicarious liability on employers in the following circumstances:

> "An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section" where:
>
>> (1) the employee or agent exercised managerial or supervisory responsibility; or
>>
>> (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or
>>
>> (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

Administrative Code of City of N.Y. § 8–107(13)(b).

Kilberg exercised managerial and supervisory responsibility over Noh.  Doc. 7 ¶ 16.  Since Kilberg had supervisory authority over Noh at all relevant times, adMarketplace can be held strictly liable under the NYCHRL.  *Garrigan v. Ruby Tuesday, Inc.*, No. 14 Civ. 155 (LGS), 2014 WL 2134613, at *6 (S.D.N.Y. May 22, 2014) ("The NYCHRL imposes strict liability on employers for discriminatory acts of managerial employees." (citing *Zakrzewska v. New School*, 928 N.E.2d 1035, 1040 (N.Y. 2010))).  adMarketplace was also aware of Kilberg's alleged discriminatory conduct as Noh reported the conduct to three of her superiors.  Doc. 7 ¶¶ 57–61.  According to adMarketplace, "Kilberg . . . [was] terminat[ed] . . . on March 31, 2022, two days after [Noh] complained about him and well before her resignation in late April 2022."  Doc. 26 at 1 n. 2.  Although adMarketplace states that Kilberg was fired right away, the Court cannot take that into account at this juncture.

23

## IV.    CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss are GRANTED in part and DENIED in part.  The hostile work environment and discrimination claims pursuant to Title VII, § 1981, NYSHRL, and NYCHRL, are not dismissed, but the constructive discharge claims are dismissed.

The parties are directed to appear for a conference on April 24, 2025, at 11:00 a.m. in Courtroom 619 of the United States Courthouse, 40 Foley Square, New York, NY 10007.

The Clerk of Court is respectfully directed to terminate the motions, Docs. 25 and 27.


It is SO ORDERED.

Dated:    March 28, 2025
          New York, New York

_____
          EDGARDO RAMOS, U.S.D.J.